1  MATTHEW J. GAUGER, Bar No. 139785
   GARY P. PROVENCHER, Bar No. 250923
2  ANTHONY J. TUCCI, Bar No. 288819
   WEINBERG, ROGER & ROSENFELD
3  A Professional Corporation
   428 J Street, Suite 520
4  Sacramento, California 95814
   Telephone (916) 443-6600
5  Fax (916) 442-0244
   E-Mail:  mgauger@unioncounsel.net
6          gprovencher@unioncounsel.net
           atucci@unioncounsel.net
7
   Attorneys for Plaintiff/Plaintiff SERVICE EMPLOYEES
8  INTERNATIONAL UNION, LOCAL 1021

9                    UNITED STATES DISTRICT COURT

10               EASTERN  DISTRICT OF CALIFORNIA

11

12
   SERVICE EMPLOYEES INTERNATIONAL          No. 2:13-cv-01670-WBS-EFB
13 UNION, LOCAL 1021,
                                            **FIRST CHANGED COMPLAINT TO**
14                    Plaintiff/Petitioner,  **COMPEL ARBITRATION**
                                            **[Fed. R. Civ. P. 15(a)(1)]**
15         v.
                                            Date:      October 7, 2013
16 PRIVATE INDUSTRY COUNCIL OF              Time:      2:00 p.m.
   SOLANO COUNTY, INC. D/B/A                Dept.:     Courtroom 5
17 WORKFORCE INVESTMENT BOARD OF            Judge:     Hon. William B. Shubb
   SOLANO COUNTY, a California corporation
18
19                    Defendant/Respondent.

20

21

22

23

24

25

26

27

28

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
428 J Street, Suite 520
Sacramento, California 95814
(916) 443-6600

FIRST CHANGED COMPLAINT TO COMPEL ARBITRATION
Case No. 2:13-cv-01670-WBS-EFB

1  TO:   THE HONORABLE UNITED STATES DISTRICT COURT FO THE EASTERN

2  DISTRICT OF CALIFORNIA

3  Pursuant to Federal Rule of Civil Procedure 15(a)(1), Plaintiff hereby submits this First

4  Amended Petition to Compel Arbitration, which respectfully shows:

5  1.   Jurisdiction of this Court is based upon 29 U.S.C. §185, 28 U.S.C. §1331, 28

6  U.S.C. §1337.  Venue is appropriate in this District since the dispute arose in this District and

7  Plaintiff is actively involved in representing its members with respect to their wages, hours and

8  working conditions in this District.  Furthermore, Defendant did business which is the subject of

9  this dispute in this District.

10  2.   Plaintiff SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 1021

11  ("Petitioner" or "SEIU Local 1021") is a labor organization doing business in the State of

12  California and is a voluntary, unincorporated association, existing under and pursuant to the laws

13  of the State of California.  Plaintiff exists in part for the purpose of providing standards of wages,

14  hours, and working conditions, and negotiating and executing collective-bargaining agreements

15  on behalf of employees in an appropriate collective-bargaining unit.  Plaintiff is a labor

16  organization within the meaning of the Labor–Management Relations Act of 1947, 29 U.S.C.

17  §151 et seq.

18  3.   Defendant PRIVATE INDUSTRY COUNCIL OF SOLANO COUNTY, INC.,

19  dba WORKFORCE INVESTMENT BOARD OF SOLANO COUNTY is engaged in interstate

20  commerce and is an employer within the meaning of the Labor–Management Relations Act of

21  1947, 29 U.S.C. §151 et seq.

22  4.   At all times herein mentioned, Plaintiff and Defendant have been parties to a

23  written Collective Bargaining Agreement to which each of the parties is bound.  A copy of said

24  Collective Bargaining Agreement is attached hereto, marked Exhibit A and incorporated herein

25  by reference.

26  5.   Section XIX of the Collective Bargaining Agreement provides for a grievance

27  procedure wherein the parties are bound to submit all unresolved disputes to a neutral Arbitrator.

28  The Arbitrator is empowered to make final and binding decisions.

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
428 J Street, Suite 520
Sacramento, California 95814
(916) 443-6600

1

FIRST CHANGED COMPLAINT TO COMPEL ARBITRATION
Case No. 2:13-cv-0160-WBS-EFB

6. Since on or about April 25, 2013, a dispute has existed over the interpretation and/or application of the Collective Bargaining Agreement in that there have been grievances and continues to be grievances concerning the interpretation of various portions of the Agreement. Section XIX Grievance Procedure (C) provide that the affected employee, the relevant supervisor and the Executive Director or his designee should meet to attempt to work out a solution to the issue prior to initiating the formal grievance process. The Collective Bargaining Agreement does not prohibit the Union from being present. The Employer has refused to participate in the informal process if the Union is present or requests to be present.

7. On April 25, 2013, the Union initiated the grievance process in eight grievances attempted to file at the informal level. A true and correct copy of the letter from the Union's Field Representative, Stephen Cutty, to the Employer's Executive Director, Robert Bloom, is attached as Exhibit B and incorporated herein as though fully set forth.

8. On May 3, 2013, the Employer responded but refused to meet to initiate the informal resolution process. A true and correct copy of the May 3, 2013 letter from Mr. Bloom to Mr. Cutty is attached as Exhibit C and incorporated herein as though fully set forth.

9. The Union responded on May 7, 2013 and moved the dispute to the second level of the grievance procedure. A true and correct copy of the May 7, 2013 letter from Mr. Cutty to Mr. Bloom is attached as Exhibit D and incorporated herein as though fully set forth.

10. The Employer responded to the Union on May 15, 2013 refusing to process the grievances. A true and correct copy of Mr. Bloom's May 15, 2013 letter to Mr. Cutty is attached as Exhibit E and incorporated herein as though fully set forth.

11. On May 23, 2013, the Union responded and requested the Employer to choose arbitrators pursuant to Step 3 of the Grievance Procedure. A true and correct copy of Mr. Cutty's May 23, 2013 letter to Mr. Bloom is attached as Exhibit F and incorporated herein as though fully set forth.

12. On May 30, 2013, the employer responded stating "please see my earlier May 15, 2013 letter to you (attached), as my continued response to your repetitive request now posed in this latest May 23 letter."

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
428 J Street, Suite 520
Sacramento, California 95814
(916) 443-6600

2
FIRST CHANGED COMPLAINT TO COMPEL ARBITRATION
Case No. 2:13-cv-0160-WBS-EFB

13.     At all times material herein, Plaintiff Union has complied with all the terms and conditions of said Collective Bargaining Agreement, but Respondent employer has failed and refused to so comply, and still so fails and refuses to comply with the said grievance and arbitration provisions of the agreement, or to submit the dispute for resolution pursuant to the provisions of said grievance and arbitration provisions.

14.     Defendant's refusal to arbitrate the grievance pursuant to the CBA is frivolous, unjustified, and in bad faith.  Plaintiff has been forced to incur attorneys' fees to obtain compliance with the arbitration procedure.  Fees incurred to so obtain compliance with a collective bargaining agreement should be awarded.  *Sheetmetal Workers' Int'l Ass'n, Local Union No. 359 v. Madison Indus., Inc. of Ariz.*, 84 F.3d 1186, 1191 (9th Cir. 1996); *Int'l Union of Petroleum and Indus. Workers v. W. Indus. Maint., Inc.,* 707 F.2d 425 (9th Cir. 1983).

WHEREFORE, Plaintiff prays that an Order of this Court be made pursuant to 29 U.S.C. § 185 and 9 U.S.C. § 4 ordering Defendant to submit the outstanding dispute to the grievance and arbitration procedures set forth in the provisions of the collective-bargaining agreement referred to herein, and to otherwise comply with the grievance and arbitration procedures required by said agreement as set forth therein.  Plaintiff furthermore seeks reasonable attorneys' fees and its costs of suit herein; and for such other and further relief as to this Court may seem just and proper.

Dated:  9/5/13

WEINBERG, ROGER & ROSENFELD
A Professional Corporation

By:  _____
MATTHEW J. GAUGER
GARY P. PROVENCHER
ANTHONY J. TUCCI

Attorneys for Plaintiff/Plaintiff SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 1021

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
428 J Street, Suite 520
Sacramento, California 95814
(916) 443-6600

3

FIRST CHANGED COMPLAINT TO COMPEL ARBITRATION
Case No. 2:13-cv-0160-WBS-EFB

# Exhibit A

# COLLECTIVE BARGAINING AGREEMENT

### Between

Admin/Program Specialist II          Admin/Program Technician III
Admin/Program Specialist I           Admin/Program Technician II
                                     Admin/Program Technician I

Represented by Service Employees International Union
Local 1021 CTW, CLC

And

## WORKFORCE INVESTMENT BOARD
## OF SOLANO COUNTY

### 2008-2013



**WORKFORCE INVESTMENT BOARD**
OF SOLANO COUNTY

COLLECTIVE BARGAINING AGREEMENT
Between

Service Employees International Union, Local 1021
And
Workforce Investment Board of Solano County, Inc.

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| Collective Bargaining Agreement | | 1 |
| Section I. | Recognition | 1 |
| Section II. | Management Rights | 1 |
| Section III. | Union Security | 2 |
| | A. Condition of Employment | 2 |
| | B. Procedures | 2 |
| | C. Check-off Obligation | 2 |
| | D. Related Terminations | 2 |
| Section IV. | Authorized Agents | 3 |
| | A. Employer's Principal Authorized Agent | 3 |
| | B. Union's Principal Authorized Agent | 3 |
| | C. Notification of Changes in Person or Address | 3 |
| Section V. | Employee Classifications | 3 |
| | A. Regular Employees | 3 |
| | B. Limited-Term Employees | 3 |
| | C. Full-Time Regular Employees | 4 |
| | D. Part-Time Regular Employees | 4 |
| | E. Probationary Employees | 4 |
| Section VI. | Union Access | 4 |
| Section VII. | Bulletin Boards | 5 |
| Section VIII. | Staff Issues Committee | 5 |
| Section IX. | Release Time | 5 |
| Section X. | Distribution of Union Literature | 6 |

i

|  |  |  | Page |
|---|---|---|---|
| Section XI. | Hours of Work | | 6 |
| | A. | Work Week | 6 |
| | B. | Work Schedule | 6 |
| | C. | Attendance | 7 |
| Section XII. | Rest and Meal Periods | | 8 |
| | A. | Rest Breaks | 8 |
| | B. | Off-Duty Meal or Lunch Periods | 8 |
| Section XIII. | Overtime | | 8 |
| Section XIV. | Evaluations | | 8 |
| | A. | Probationary Employees | 9 |
| | B. | Regular Employees | 9 |
| | C. | Step Increases | 9 |
| | D. | Special Evaluations | 9 |
| | E. | Completion Timelines for Evaluations and Salary Adjustments | 10 |
| Section XV. | Evaluation Appeals | | 10 |
| | A. | Overall Standard Evaluation | 10 |
| | B. | Overall Short of Standard Evaluation | 10 |
| | C. | Grievance Procedure | 10 |
| Section XVI. | Layoffs | | 10 |
| | A. | Staff Reduction or Layoff | 10 |
| | B. | Procedures | 11 |
| | C. | Consultation | 11 |
| | D. | Bumping | 11 |
| | E. | Re-Employment | 12 |
| | F. | Voluntary Quits | 12 |
| Section XVII. | Personnel File | | 12 |
| | A. | Employee Personnel File | 12 |
| | B. | Status Change Notification | 13 |
| | C. | Performance Material | 13 |
| | D. | Disagreement Statements | 13 |
| | E. | Future Material Placed in the EPF | 13 |
| | F. | Confidentiality of Employee Health, Medical and/or Performance Evaluation Information | 13 |

|                |                                                      | Page |
|----------------|------------------------------------------------------|------|
| Section XVIII. | Disciplinary Procedures...............................| 14   |
|                | A.   Expected Employee Conduct............................. ...| 14   |
|                | B.   Disciplinary Procedures............................. ...| 14   |
|                | C.   Reasons for Disciplinary Action............................| 14   |
|                | D.   Forms of Discipline.............................| 15   |
|                | E.   Union Representation.............................| 16   |
| Section XIX.   | Grievance Procedure...............................| 16   |
|                | A.   Definition.............................| 16   |
|                | B.   Eligibility.............................| 16   |
|                | C.   Procedures.............................| 17   |
|                | D.   Time Limits.............................| 18   |
|                | E.   Ability to Reopen Clause.............................| 18   |
| Section XX.    | No Discrimination.............................| 18   |
| Section XXI.   | Salary Compensation...............................| 19   |
|                | A.   Appointment Step for New Employees.....................| 19   |
|                | B.   Salary Ranges.............................| 19   |
|                | C.   Cost of Living Adjustment (COLA)...........................| 19   |
|                | D.   Method for conducting Future Salary Surveys..............| 19   |
|                | E.   Specific Project Salary Adjustments (for Interim Project Lead Assignments)..........................| 20   |
| Section XXII.  | Employment Status Changes.............................| 20   |
|                | A.   Promotion.............................| 20   |
|                | B.   Demotion.............................| 21   |
|                | C.   Transfer.............................| 21   |
|                | D.   Lateral.............................| 21   |
|                | E.   Posting of Open Functional Assignments....................| 21   |
| Section XXIII. | Holidays/Vacation/Sick Leave and Other Leaves....................| 22   |
|                | A.   Paid Leaves.............................| 22   |
|                | B.   Unpaid Leaves.............................| 26   |
| Section XXIV.  | Fringe Benefits.............................| 29   |
|                | A.   Medical Benefits.............................| 29   |
|                | B.   Dental Benefits.............................| 29   |
|                | C.   Vision Benefits.............................| 29   |
|                | D.   Life Insurance.............................| 29   |
|                | E.   Retirement.............................| 30   |

|  |  |  | Page |
|---|---|---|---|
| Section XXIV. | | Fringe Benefits (con't)................................................ | 30 |
| | F. | IRS Approved 125 and 129 Plan............................... | 30 |
| | G. | Miscellaneous Benefits............................................... | 30 |
| | H. | Tuition Reimbursement............................................. | 30 |
| Section XXV. | | Miscellaneous............................................................... | 31 |
| | A. | Dress Code................................................................. | 31 |
| | B. | Job Notices................................................................. | 31 |
| | C. | No Strike/No Lockout................................................. | 32 |
| | D. | Severability................................................................. | 32 |
| Section XXVI. | | Term of Agreement...................................................... | 32 |
| Section XXVII. | | Complete Agreement.................................................... | 32 |
| | | Signature Page............................................................. | 34 |
| Attachment A. | | Classification and Salary Ranges................................... | 35 |

## COLLECTIVE BARGAINING AGREEMENT

This Collective Bargaining Agreement ("Agreement") is made and entered into by and between the Private Industry Council of Solano County, Inc, doing Business as the Workforce Investment Board (WIB) of Solano County, Inc., hereinafter referred to as the Employer and Service Employees International Union (SEIU), Local 1021, CTW, CLC hereinafter referred to as the Union.

### SECTION I. RECOGNITION

The Employer recognizes the Union as the exclusive bargaining representative for all full-time and regular part-time employees, as defined by the National Labor Relations Board (NLRB), in the classifications of Administrative/Program Specialists I, and II, and Administrative/Program Technicians I, II and III, excluding supervisory, confidential, and temporary employees.

### SECTION II. MANAGEMENT RIGHTS

Except as expressly modified or restricted by a specific provision of this Agreement, nothing in this Agreement shall be deemed to limit the Employer in any way in the exercise of regular and customary management functions, including all statutory and inherent managerial rights, prerogatives, and functions, which are retained and vested exclusively in the Employer. These include, but are not limited to, the rights in accordance with the Employer's reasonable and exclusive judgment and discretion: to evaluate the performance of employees, reprimand, suspend, discharge, or otherwise discipline employees for cause; to determine the number of employees to be employed; to hire employees, including temporary and limited term employees; determination of employee qualifications and assignment and direction of their work; to promote, demote, transfer, layoff, recall to work and retire employees; to set the standards of productivity, and the services to be rendered; to determine the amount and forms of compensation for employees with the understanding that this Agreement sets the minimum compensation for covered employees; to maintain the efficiency of operations; to determine the personnel, methods, means and facilities by which operations are conducted; the design and implementation of safety programs and plans for increased efficiency; to set the starting and quitting time and the number of hours and shifts to be worked; to use temporary or limited term employees to perform work or services; to relocate the WIB's operations to any part thereof; to expand, reduce, alter, combine, transfer, assign, or cease any job, department, operation or service; to control and regulate the use of facilities, equipment and other property of the Employer; to introduce new or improved methods, materials, machinery, and equipment; to determine the number, location and operation of departments, divisions, and all other units of the Employer; to issue, amend and revise policies, rules, regulations, and practices; and to take whatever action, which it considers necessary to determine, manage, and fulfill the mission of the Employer and to direct the Employer's employees. The Employer's failure to exercise any right, prerogative, or function hereby reserved to it, except in instances of a clearly established past-practice regarding wages, hours and working conditions shall not be considered a waiver of the Employer's right to exercise such right, prerogative, or functions or preclude it from exercising the same in another way not to conflict with the express provisions of this Agreement.

## SECTION III.  UNION SECURITY

A.   **Condition of Employment**

It shall be a condition of employment that all employees of the Employer covered by this Agreement who are members of the Union in good standing on the effective date of this Agreement shall remain members in good standing and those who are not members in good standing on the effective date of this Agreement shall, on the 30th day following the effective date of this Agreement, become and remain members in good standing in the Union or pay amounts required by the Union under the "Agency Shop" arrangement, which it may implement and administer.  It shall also be a condition of employment that all employees covered by this Agreement and hired on or after its effective date shall, on the 30th day following the beginning of such employment, become and remain members in good standing in the Union or contribute amounts required by the Union under an Agency Shop option under the appropriate circumstances.

B.   **Procedures**

The Employer will notify the Union of the name, address and telephone number of each employee hired in any of the classifications covered by this Collective Bargaining Agreement, in writing within five (5) working days of initial employment.  The Union shall then forward to said employee an authorization form advising the employee that the employer has entered into a Union Security Agreement/Agency Shop with the Union and otherwise setting forth all conditions of employment related thereto.  It shall be the Union's responsibility to provide a check-off form for the employee's signature authorizing payroll deductions of Union dues or agency fees.

The Union will provide said authorization form signed by the employee to the Business & Employment Services Manager, or his/her designee, who shall then implement it in accordance with its terms after the employee has been employed for thirty (30) calendar days.  The Union will hold the Employer harmless for any and all claims made against it by any current or former employee related to the Employer's compliance with this Union security provision, and any and all expenses incurred in its defense against any such claim, including reasonable costs and attorney fees.  In no event shall the Employer be required to pay from its own funds Union dues, service fees or charitable contributions which the employee may be obligated to pay but fail to pay regardless of the reason.

C.   **Check-off Obligation**

The Employer shall deduct Union dues, service fees, initiation fees, voluntary COPE deduction, or charitable contributions and premiums for approved insurance programs from an employee's pay, pursuant to a signed authorization form from the employee, in conformity with California regulations.  The Employer shall promptly pay to the designated payee all sums  so  deducted  and  shall  have  no  further  duty  on  this  subject.

D.   **Related Terminations**

When any employee employed in the Collective Bargaining unit described herein has failed to meet his/her obligation under this section, the Employer agrees to discharge such employees within fifteen (15) days after receiving written notice from the Union.

Page 2 of  34

## SECTION IV.  AUTHORIZED AGENTS

In their capacity as the Authorized Agents for the Employer and the Union, all communications both verbally and in writing must be sent to the two named individuals below.  However, if during the effective dates of this Agreement the Authorized Agents for either party are changed those amendments must be submitted in writing and within five (5) working days of the Agent's name change.  `

A.     **The Employer's Principal Authorized Agent Shall Be**

         Mr. Robert Bloom, Executive Director
         Workforce Investment Board (WIB) of Solano County, Inc.
         320 Campus Lane
         Fairfield, CA   94534-1400
         Phone Number       707-863-3501
         FAX Number         707-864-3386
         Email Address rbloom@solanowib.org

B.     **The Union's Principal Authorized Agent Shall Be**

         Stephen Cutty, Field Representative
         Service Employee's International Union
         (SEIU), Local 1021 CTW, CLC
         2300 Boynton Avenue, Suite #200
         Fairfield, CA     94533
         Phone Number       707-427-7209
         FAX Number         707-422-5107
  Email Address Stephen.cutty@seiu1021.org

C.     **Notification of Changes in Person or Address**

         Each party shall immediately notify the other of a change in the person or address of its principal authorized agent.

## SECTION V.  EMPLOYEE CLASSIFICATIONS

A.     **Regular Employees**

         A regular employee is a full or part-time employee appointed to a position which has been authorized by the Employer and covered by this Agreement.

B.     **Limited-Term Employees**

         A limited-term employee is either a full or part-time employee hired for a specific program, limited-term of employment or purpose whose position is at the time of engagement to be a finite duration and to be eliminated when such programs or need terminates and such services are no longer required.  Such employees are not covered by this Agreement.  However, the Employer will provide written notification to the Union whenever such employees are engaged.

1. **Limited-Term Employed for More Than One (1) Year**
An employee initially hired on a limited term basis in a classification covered by this Agreement, and has worked for one (1) day more than twelve (12) consecutive months shall, as of that date be covered by all provisions of this Agreement.

C. **Full-Time Regular Employees**
A full-time regular employee is one that is neither a temporary or limited term employee who works at least forty (40) hours per week on a regularly scheduled basis.

D. **Part-time Regular Employees**
A part-time regular employee is a non-temporary or limited term employee who works less than forty (40) hours per week on a regularly scheduled basis.

E. **Probationary Employees**
Probationary employees are employees who are full or part-time regular employees during their first six (6) consecutive or aggregate months of employment, unless the probationary period has been extended for an additional three (3) months.

1. **Probationary Period**
The first six (6) months of employment for a newly hired and newly promoted employee shall be a probationary period. The probationary period may be extended for an additional three (3) months. A newly hired employee may be terminated at any time during his/her probationary period without a right to appeal, except for alleged discrimination. Such termination during the probationary period shall not be subject to the grievance procedure.

2. **Rejection During A Promotional Probationary Period**
An employee terminated during his or her probationary period in a promotional classification, covered by this Agreement, and who has passed an initial probationary period with the Employer shall have the right to return to a position in the classification and functional assignment he/she was in prior to his or her promotion if a vacancy exists in that functional assignment.

## SECTION VI. UNION ACCESS

It is agreed by both parties that for the purpose of carrying out and enforcing the terms of this Agreement, the authorized representative of the Union upon notification to the Employer shall have the right of visiting and entering the establishment of the Employer during regular business hours.

The Business & Employment Services Manager shall be given prior notification of the date and time of the visit. Access shall not be unreasonably denied. This privilege shall be exercised reasonably and shall not disrupt the work of employees, provided that the Union representative may confer with any employee and his or her supervisor or other Employer representative in connection with a complaint or problem concerning the employee during working hours. If the meeting is expected to

last in excess of fifteen (15) minutes, the steward will notify the employee's supervisor. Failure to notify that the meeting shall exceed fifteen (15) minutes shall result in termination of the meeting at fifteen (15) minutes without recourse to the grievance procedure hereunder.

The Employer will recognize one (1) duly appointed shop steward for the Vallejo office, one (1) for the Fairfield office, and one (1) for the Vacaville office. If during the term of this contract, the Employer opens an additional office, they will recognize one (1) duly appointed shop steward for each office.

## SECTION VII.  BULLETIN BOARDS

The Employer shall make space available to the Union on a bulletin board in each work location. Such postings will be the responsibility of the Union Steward(s) or Field Representative.  The Employer will have no responsibility for policing such material.  All materials posted on union bulletin boards shall be in good taste and strictly impersonal in nature and limited to the legitimate business of the Union. Prior to posting, any material posted shall be plainly and legibly initialed by an authorized representative of the Union.

## SECTION VIII.  STAFF ISSUES COMMITTEE

A Union/Management Committee consisting of three (3) members selected by the Union and three (3) members selected by the Employer, (one of whom is the Executive Director) shall meet quarterly or by mutual agreement to discuss issues that will work towards accomplishing:

    1.    To improve communications between representatives of labor and management;

    2.    To provide workers and Employers with opportunities to study and explore new and innovative joint approaches to achieving organizational effectiveness;

    3.    To assist workers and Employers in solving problems of mutual concern not susceptible to resolution within the Collective Bargaining process, including matters that can be addressed through the grievance procedure;

    4.    To bring to the Employers attention any concerns regarding workload equity; and,

    5.    Any action(s) taken as a result of the committee meetings will be at the sole discretion of the Executive Director, and not grievable.

## SECTION IX. RELEASE TIME

An employee has a lawful right to have a shop steward present in an interview that may reasonably lead to discipline, or a grievance meeting, or such circumstances whenever the Employer requests a shop steward be present.  The shop steward shall be granted a maximum of twenty (20) paid hours

per calendar year to represent employees' including investigations. The Employer will make his/her representatives available to conduct said business at reasonable times so as to avoid loss of productivity of the steward and the affected employee. The steward shall not otherwise conduct Union business during working time.

Both the supervisor of the employee requesting assistance, and the Employer's Business & Employment Services Manager shall receive notification from the Union prior to the time the requested time off is to be taken.

At the Union's option and upon appropriate notice, a maximum of four (4) of the twenty (20) paid release hours per calendar year may be used for Shop Steward training. The Union must provide the Employer's Business & Employment Services Manager with a minimum of three (3) working days advanced notice before the requested training is scheduled to take place.

## SECTION X.  DISTRIBUTION OF UNION LITERATURE

The Union may distribute literature (specific to this Agreement) to employees through the WIB's internal mail system, as long as this does not disrupt the conduct of the Employer's business. The Union also agrees to provide a copy of all distributed literature to the Business & Employment Services Manager.

## SECTION XI.  HOURS OF WORK

A.  **Work Week**

The work week is seven (7) consecutive calendar days, beginning on Sunday at 12:00 a.m., and ending on Saturday at 11:59 p.m.

B.  **Work Schedule**

The basic work hours and work week are eight (8) hours per day and forty (40) hours within a work week, Monday through Friday, or possibly to include a Saturday but not to exceed a five (5) day work week, 8:00 a.m. to 5:00 p.m. The Employer shall have sole discretion as to whether or not to permit an employee to work a flexible work schedule. Flexible work schedules must be between 7:30 a.m. and 9:30 p.m.

    1.  **Process for Requesting a Flexible Work Schedule**

        a.  If an employee is interested in working a flexible work schedule he/she must submit a written request to their immediate supervisor expressing their interest in flexing their work schedule, and the eight (8) hour schedule they would like to have.

        b.  The supervisor will be responsible for recommending approval/denial of the request and forwarding it to the Division Manager within three (3) working days. A brief explanation of why the supervisor denies a request is also necessary.

Page 6 of  34

    c.      The Division Manager will be responsible for recommending approval or denial of the employee request to the Executive Director within three (3) working days of receipt of the request.  A brief explanation of why the Division Manager denies a request is also necessary.

    d.      The Executive Director will have the sole discretion of approving or disapproving the flexible work schedule request.  The Executive Director will notify the Division Manager and Business & Employment Services Manager of his/her decision to approve/deny the request within three (3) working days.

The Business & Employment Services Manager or designee will be responsible for providing the employee with a copy of the approved/denied request and placing the original in the employee's official personnel file.

## C.    **Attendance**

Regular attendance and punctuality are part of all employees' job responsibilities.  It is the Employer's expectation that all employees are present and on time every day.

### 1.    **Absence**

    a.      An absence is any time lost from work regardless of reason, including sickness and tardiness.  An absence excludes time off scheduled in advance using FMLA/CFRA/Medical leave, ADA leave, personal leave of absence, bereavement, jury duty, witness duty, workers compensation time, military duty, and any other allowable absence that has been pre-approved.

    b.      Excessive absenteeism will be considered to be when the number of an employee's unapproved absences exceeds twelve (12) days in any twelve (12) month period and/or three (3) days in the three (3) month period prior to an employee's most recent absence.  Excessive absenteeism may result in disciplinary action up to and including termination.

    c.      No call is when an employee fails to report to work and fails to speak directly to his/her supervisor within the first hour of the first scheduled work day of such absence.  No call may result in disciplinary action up to and including termination.

    d.      No show is when an employee fails to report to work and fails to notify his/her supervisor for three (3) consecutive scheduled work days, (i.e., three (3) consecutive no call days).  No show employees will be considered to have voluntarily resigned from WIB employment.

### 2.    **Tardiness**

    a.      Tardiness is when an employee arrives at his/her work station ready to work at

a time later than the scheduled commencement work time (include return from breaks and/or meal periods).

b.   Excessive tardiness is when an employee is late more than three (3) times within any thirty (30) day period. Tardiness has been defined as reporting 10 minutes late for either the commencement of work and/or returning from breaks as well as meal periods.  This standard of excessive tardiness will be applied uniformly. Excessive tardiness may result in disciplinary action up to and including termination.

## XII.  REST AND MEAL PERIODS

Rest and meal periods are scheduled by each supervisor.

A.    **Rest Breaks**

Each employee shall be permitted two (2) fifteen minute rest breaks, one in the morning between 10:00 and 11:00 and one in the afternoon between 2:30 and 3:30. These morning and afternoon breaks will be amended by the bargaining unit member's supervisor if an adjusted work day has been approved.  These breaks may not be combined or added to an employee's lunch period.

B.    **Off-Duty Meal or Lunch Periods**

A scheduled sixty (60) minute off-duty meal or lunch period will be observed during the hours 11:30 a.m. and 2:30 p.m., each working day; unless the employee is on an approved adjusted work schedule in which his/her work day begins before or after 8:00 a.m. or ends before or after 5:00 p.m. In those cases an amended off-duty meal period will be scheduled by the bargaining unit member's supervisor to occur before 11:30 a.m. or extend beyond the 2:30 p.m. standard timeframes.

## XIII.  OVERTIME

Employees who are caused to work more than eight (8) hours in a day or forty(40) hours in a work week, or in excess of the number of hours in a scheduled workday under an alternative work week plan, shall receive time and one-half of their regular hourly rate of pay for each overtime hour or portion thereof worked.  Double time shall be paid for work in excess of twelve (12) hours in a day or past eight (8) hours on the seventh day of a work week.

## SECTION XIV.  EVALUATIONS

**General Principles**

A supervisor's evaluation of an employee should be as objective as possible.  Individual ratings on an evaluation should be supported by written comments.  All written comments should be specific and

include examples that occurred within the period covered by the evaluation. This should be done for both positive and negative ratings and comments.

**A.** **Probationary Employees**

A probationary employee shall receive an evaluation prior to the completion of three (3) months and six (6) months employment as either a new, transferred, demoted or promotional employee. An employee who has had his/her probationary period extended shall receive an evaluation prior to completing the first forty-five (45) days of the extension and by the end of the three (3) months extension. If the Employer fails to give a probationary employee his/her evaluation by the completion of the six (6) months probationary period or by the end of the nine (9) months extended probationary period, the employee shall be deemed to have completed probation and gained regular status.

The Employer reserves the right to terminate a probationary employee at any time during the six (6) months or extended nine (9) months probationary period. Such termination can be made without notice, without cause, and except for alleged discrimination, is not subject to the grievance procedures.

**B.** **Regular Employees**

Regular employees shall receive an evaluation annually, on the anniversary date of the completion of their probationary period, or as soon thereafter as practicable.

**C.** **Step Increases**

**1.** **Probationary Period**

Performance evaluations will be used as the primary basis for determining if an employee is eligible to receive a salary increase at the successful completion of six (6) months or if the probationary period is extended nine (9) months of employment.

**2.** **Annual Anniversary Date**

Performance evaluations will be used as the primary basis for determining if an employee is eligible to receive a salary increase at the successful completion of their annual review date within a specific functional assignment.

If either a probationary or annual evaluation results in a wage increase it will be retro-active to the employee's anniversary date. The Executive Director based on the overall rating of the probationary or annual evaluation will determine the salary adjustment for the employee.

**D.** **Special Evaluations**

The Executive Director, at any time, may place an employee on a special evaluation period. This special evaluation period can not be for less than 30 days nor be longer than 90 days.

Employees that successfully complete a special evaluation period are not necessarily eligible to receive any type of salary adjustment.

E.  **Completion Timelines for Evaluations and Salary Adjustments**
    1.  Completed evaluations, (signed by the Executive Director), must be issued to the employee within thirty (30) calendar days of his/her probationary completion date or anniversary date. If the employee indicates a desire to meet with the Executive Director and discuss his/her evaluation, this timeline may be extended up to an additional thirty (30) days. This procedure presumes that the employee will be available to participate in the evaluation process.

    2.  Any salary adjustment must be implemented within 2 pay periods from the date the Executive Director signed the employee evaluation.

    Failure to adhere to these time-lines will be subject to the grievance procedures.

## SECTION XV.  EVALUATION APPEALS

A.  **Overall *"Standard"* Evaluation**
    An employee at his/her discretion may submit a written comment to an overall satisfactory evaluation.  The Employer's response or non-response to the employee's comment on an overall satisfactory evaluation shall not be subject to the grievance procedure.

B.  **Overall "Unacceptable Performance" or *"Short of Standard"* Evaluation**
    An employee may submit a written response and/or request to meet with the Executive Director regarding an overall unsatisfactory evaluation.  The Executive Director's written decision on the evaluation is final and binding and is not itself subject to the grievance procedure, unless the evaluation results in a reduction in wages, demotion, or discipline.

C.  **Grievance Procedure Not Available for Evaluation Process**
    The evaluation process and the evaluation itself is not subject to the grievance procedure. Any reduction in wages, demotion, or discipline resulting from an evaluation is subject to the grievance procedure.

## SECTION XVI.  LAYOFFS

A.  **Staff Reduction or Layoff**
    Staff reduction or layoff may be necessary based on the following circumstances:
    1.  Budgetary, funding, or programmatic problems which require the deletion of positions or programs, or the consolidation or reclassification of positions or a workforce reduction.

2.    A WIB reorganization for purposes of economy, effectiveness, efficiency, or other reasons or purposes.

3.    Seniority shall be defined as the total length of service with the Employer, excluding unpaid leaves of absence.

**B.    Procedures**

If the Employer considers it necessary to reduce its workforce, it will determine the functional assignments within classifications and number of bargaining positions to be reduced. Such layoffs may be necessary based on budgetary, funding or program problems which require the deletion of program assignments or the consolidation or reclassification of assignments, or a workforce reduction. The Employer will layoff the least senior employee in the functional assignment subject to a work reduction and not on a classification wide basis; additional layoffs in the same functional assignment will occur in relative order of seniority. On that basis, employees who have previously performed satisfactorily or can otherwise demonstrate the knowledge, skills and abilities to perform in a position which will be retained, may "bump" back into that functional assignment. However, when the employee desiring to "bump" back has not served in the functional assignment to which he/she desires to be "bumped" back to, that employee shall serve on a probationary basis in that functional assignment. This probationary basis shall be distinguished from that accorded to newly hired employees and will not affect that employee's obligation to meet the requirements of the Union security provision hereof. The Employer's determination of that employee's skills and abilities and fitness for the desired assignment shall be final and binding and not subject to the grievance procedure. Notwithstanding their qualifications, an employee currently under a plan of correction may be laid off prior to other employees in the same functional assignment and classification. Probationary employees in bargaining unit functional assignments within a classification shall be laid off before any regular bargaining unit employees. Regular employees scheduled for lay off shall be given written notice of such layoff at least fourteen (14) calendar days prior to the effective date of the layoff. Staff being laid off on an emergency basis shall be given at least seven (7) calendar days notice.

**C.    Consultation**

Concurrent with sending notice to affected employee(s), if not sooner, the Employer shall notify the Union of impending layoffs. Such notice shall constitute an offer to consult with the Union to determine if any feasible alternatives to layoff exist. The Union may request, and the Employer shall grant consultation thereon, provided said request is made within seven (7) days of notification. Failure to make a timely request shall be deemed a waiver of the right to consult regarding the noticed layoff.

**D.    Bumping**

In lieu of being laid off, an employee who is not on a plan of correction may:

1.    Request to move to a vacant functional assignment in a classification with a lower pay

Page 11 of 34

rate if the employee has performed in the vacant functional assignment, or can otherwise demonstrate that he/she is qualified to perform the duties of that functional assignment; or

2.   An employee not on a plan of correction may bump or displace another employee with less seniority in a same classification in which he/she has previously served a successful probationary period with the Employer, or can otherwise demonstrate that he/she is qualified to perform the duties of that functional assignment.

E.   **Re-Employment**

If a vacancy occurs in a functional assignment in which there is a layoff, within eighteen (18) months of the layoff, the employer shall first resort to the re-employment list before filling said vacancy through recruitment. If a laid-off employee on the re-employment list has been previously qualified for a vacant functional assignment, that employee will be offered, in reverse order of layoff, an opportunity to fill that functional assignment before it is filled through recruitment other than from the re-employment list.

Laid off employees who have not previously been qualified for a vacant functional assignment, and who are not on a plan of correction, and who are on the re-employment list shall be notified and given an opportunity to apply for vacant positions on the same basis as recruited employees. Copies of said notification(s) shall be mailed by the Employer to the last known address of laid off employees on the re-employment list. The Employer shall have no other obligation to notifying such employees.

If an employee on the re-employment list does not respond within three (3) working days from receipt of the notice of vacancy, or if the notice is returned as undeliverable or if the employee declines the opportunity, his/her name shall remain on the re-employment list for eighteen (18) months from the date of his/her layoff. Only after the eighteen months have been exhausted, will the employees name be removed from the re-employment list.

F.   **Voluntary Quits**

Any employee who proposes to resign shall give two (2) weeks notice to the Employer.


## SECTION XVII. PERSONNEL FILE

A.   **Employee Personnel File**

An Employee Personnel File ("EPF") containing all materials pertinent to the employment and performance of each employee, but not the Employer's internal communications with its counsel, shall be maintained by the Employer's Business & Employment Services Manager. Non-confidential material contained in this file will consist of 1) items reviewed and/or issued to the employee; and 2) that are either signed by the employee or have a place for the

Page 12 of 34

employee to sign signifying that the material has been provided.  Should an employee refuse to sign any document that is to be placed in this file, the supervisor and Business & Employment Services Manager will make such a notation and date and initial the form. This EPF shall be available upon the employee's or the Union's request at reasonable times for inspection in the presence of the Employer's designated representative. Under this provision, each person inspecting the EPF shall sign a log which the Employer will maintain.

**B.**      **Status Change Notification**
It is the employee's obligation to notify the Employer in writing of any change in the employee's name address, telephone number, tax status, marital status (for benefit and tax withholding purposes only), addresses and telephone numbers of dependents and spouse or former spouse (for insurance purposes only), beneficiary designations for insurance, disability, and pension plans, person(s) to be notified in case of emergency, and any factors that affect the employee's ability to carry out his/her duties.

**C.**      **Performance Material**
All material relating to an employee's performance shall be signed by the Employer's designated representative and a copy of such material shall be provided to the employee. The employee shall acknowledge receipt of a copy of such material by signing the copy to be filed in the EPF.  The employee's signature thereon signifies that the employee has been provided the material and has read it.

**D.**      **Disagreement Statements**
An employee may have placed in his/her EPF a written statement of disagreement to any material in the EPF and this statement shall be attached to the material in question.  The employee, upon request, shall be given a copy of any material in the EPF.

**E.**      **Future Material Placed in the EPF**
After the effective date of this Agreement, all future material placed in the EPF that the Employer and employee agree is incorrect, will be corrected or removed.

**F.**      **Confidentiality of Employee Health, Medical and/or Performance Evaluation Information**
The Union and Employer agree that in the interest of protecting all employees' right to privacy, any information concerning an employee's health/medical situation, job performance and/or formal personnel evaluations, which the employee does not make public, will be maintained as private information, except to the extent required by this Agreement.

## SECTION XVIII. DISCIPLINARY ACTION

A.   **Expected Employee Conduct**

All employees are expected to perform their assigned work in a competent manner, to cooperate with their supervisors and their fellow employees, to conduct themselves in a manner which brings no discredit upon the WIB, and to abide by these rules. Failure to do so will be cause for disciplinary action as set forth in this section. The Employer reserves the right to commence disciplinary action at whatever step it considers appropriate.

B.   **Disciplinary Procedures**

Regular full-time and part-time employees who have passed probation and are covered by this Agreement shall not be disciplined except for just cause. Prior to termination, suspension or demotion, the employee's immediate supervisor will provide counseling and a written evaluation of performance, including a statement of action required to remove the deficiency. The employee will be given a reasonable period of time to improve performance, no less than forty-five (45) days, unless the employee's conduct constitutes or creates the clear possibility of a hazard to clients, to himself/herself or to fellow employees, is considered detrimental to clients, or involves dishonesty or gross misconduct.

Notice of disciplinary action shall be promptly served to the employee either in person or by certified mail, return receipt requested. The notice shall include the following information:

1.   Effective date of the disciplinary action;

2.   Statement of the nature of disciplinary action;

3.   Statement of the cause for disciplinary action;

4.   Statement advising the employee of his/her right to appeal and the right of Union representation; and,

5.   A Plan of Correction - if the Employer requires corrective action by the employee.

A copy of said notice will be sent to the Union by facsimile transmission concurrently with the notice to the employee.

C.   **Reasons for Disciplinary Action**

An employee may be disciplined for various reasons, including but not limited to the following:

1.   Absence without proper authorization;

2.   Tardiness;

3.   Dishonesty;

Page 14 of 34

4.      Conviction of a crime of a serious nature: a crime of a serious nature means conviction of a felony or misdemeanor involving moral turpitude.  A plea or verdict of guilty for a charge of a felony or any offense involving moral turpitude is deemed to be a conviction within the meaning of this section;

5.      Inefficiency;

6.      Insubordination;

7.      Violation of any of the provisions of the WIB Personnel Policy or WIB authorized standard operating procedures;

8.      Violation of the WIB computer network procedures;

9.      Incompetence;

10.     Intoxication on the job;

11.     Unless authorized legally to do so, taking, possessing, being under the influence of, being addicted to, offering for sale, any controlled substance while on duty.  The term "controlled substance" shall have the meanings that the term has in the California Health & Safety Code, division 10;

12.     On-the-job, non-work related interference with other workers;

13.     Fraud in securing employment;

14.     Discourteous, offensive, or other inappropriate behavior during work hours (relating to WIB functions) toward fellow employees, supervisors, clients, students, or members of the public;

15.     Use of sick leave in a manner not authorized by the Personnel rules;

16.     Negligence or willful misconduct resulting in damage to WIB property or waste of supplies while on duty; and,

17.     Neglect of duties, failure to perform duties.


D.      **Forms of Discipline**
The forms of discipline which may be used by supervisors to redress employee conduct falling within any of the categories listed here above shall consist of the following:


Page 15 of 34

- Verbal reprimand          • Written reprimand
- Demotion                  • Reduction in pay
- Suspension without pay     • Dismissal

The Executive Director may suspend an employee from his/her position with pay at any time pending disciplinary action.   Written notice of suspension shall be given to an employee within three (3) working days of such action.

The Executive Director may dismiss any employee.   The dismissed employee's salary, and any accrued vacation leave will be paid upon termination.

**E.**   **Union Representation**

An employee covered by this Agreement shall have the right to have a Union representative present at any meeting with supervisors or management representatives, which is investigatory and potentially disciplinary in nature under the National Labor Relations Act's definition of such in the United States Supreme Court's Weingarten decision.   The Employer will advise the employee of such rights (i.e., whether the interview may result in discipline) before any such meeting.   If the employee chooses to not have a Union representative present, the right to do so is deemed waived.   If the Employer has notified the employee that the meeting will not result in discipline, there shall be no requirement of Union representation.

Disciplinary actions as defined herein may be appealed by using the grievance procedure. Unless specifically set forth in this Agreement, no other Personnel actions are subject to the grievance procedure.

## SECTION XIX.  GRIEVANCE PROCEDURE

**A.**   **Definition**

A grievance is defined as a claim or complaint by a regular or probationary employee, other than newly hired employees in their initial probationary period, covered by this Agreement, the Union, or the Employer, concerning the interpretation or application of this Agreement regarding any action of the employer pertaining to wages, hours or working conditions.

**B.**   **Eligibility**

Any regular or probationary employee covered by this Agreement may use this procedure to the extent permitted by this Agreement.   Newly hired probationary employees shall not have the right to use this grievance procedure regarding termination or other disciplinary action taken against them by the Employer, and a promoted probationary employee shall not have the right to use this procedure regarding his/her termination or demotion by the Employer, except when the action is alleged to have occurred as a result of discrimination as defined in the Agreement.

C.  **Procedures**
    **Informal Resolution Process**
    Grievances shall initially be taken up verbally by the employee and the immediate supervisor in an attempt to settle the matter on an informal basis.  The Employer's Business and Employment Services Manager, or his/her designee, shall be advised of such meetings at least three (3) days prior and shall attend them.  The parties consider it most desirable to settle grievances informally and promptly.  If this process does not resolve the matter the employee may proceed to the formal process described herein.

**Formal Resolution Process**

Step 1           If the grievance is not resolved through the Informal Process it may be submitted in writing to the Executive Director or his/her designee within seven (7) working days after the Informal Process is completed.  In order to be valid, the grievance must contain all disputed elements and particulars specified in the Informal Process.  The Executive Director or his/her designee shall schedule a meeting to hear the grievance within the (10) working days after receiving it, and will provide the grievant and Union a written response within (10) working days after the meeting.  The Employer and Union may agree to extend these time deadlines and the party making the request shall document the extension in writing and provide it to the other party.

Step 2           If the grievance is not resolved at Step 1, the Union or Employer may submit a written request for an Adjustment Board within ten (10) working days after Step 1 is completed.  The Adjustment Board shall consist of one (1) representative (not a WIB employee) selected by the Union, one (1) representative selected by Management, and a mediator from the State Mediation Service.  The Adjustment Board shall convene within twenty-five (25) working days of the timely request to the Executive Director.  The Adjustment Board shall conduct an informal hearing, including testimony of witness(es) and relevant document(s).  A majority vote by the Adjustment Board shall result in a written advisory opinion, which shall include a brief rationale, and issued to the parties.  Either party may appeal the grievance to Step 3 - Arbitration, by providing written notice to the other party within fifteen (15) working days from the date the Adjustment Board's written recommendation is received.

Step 3           If the grievance is not resolved at the 2nd step, it may be submitted as a written Request for Arbitration to the Executive Director, or Union within fifteen (15) working days after the 2nd step is completed.  Failure to request Arbitration in a timely manner, shall result in the grievance being considered dropped and the right to arbitrate waived.  The Employer and Union may agree to extend this time deadline and the party requesting extension shall document the extension in writing and provide it to the other party.  Upon receipt of a

written request for arbitration of a grievance under this procedure, the Employer and the Union shall attempt to select a mutually acceptable, impartial arbitrator.

In the event that the parties cannot agree on an impartial arbitrator within fifteen (15) days after receipt of the written request for arbitration, either party may request the American Arbitration Association to submit a list of five (5) representative arbitrators. Each alternate party shall alternately scratch two (2) names from the list, the first scratch being selected by lot and the person remaining shall be the arbitrator. The Arbitration expenses, excluding costs of representation shall be paid equally by the Employer and the Union. The decision of the arbitrator shall be final and binding upon the parties and shall be issued in writing within thirty (30) days of the Arbitration hearing. The arbitrator shall have no authority to alter, adjust or modify the terms of this Agreement.

**D.** **Time Limits**
1.    Time limits may be extended or waived by mutual written agreement of the parties.

2.    Failure of the Employer to reply to a grievance within the specified time limits automatically grants the grievant the right to process the grievance to the next step.

3.    If the grievant fails to refer the grievance from one step to the next step within the specified time limits, the grievance shall be considered settled on the basis of the last decision.

**E.** **Ability to Reopen Clause**
The Employer reserves the right to notify the Union in writing no less than one-hundred and twenty (120) days before July 1st, 2009, 2010, and 2011 of their desire to re-open negotiations to discuss Sub-section C-Procedures, Formal Resolution Process – Step 2 under Section XIX – Grievance Procedure of this Agreement.

## SECTION XX.  NO DISCRIMINATION
**A.**    Neither the Employer nor the Union shall discriminate against any employee or applicant for employment on account of race, color, creed, or religion, national origin, gender, age, sexual preference, marital status, physical or mental handicap, HIV/Aids status, or political affiliation.

**B.**    The Employer agrees not to discriminate against any employee because of membership in the Union or because of any activities on behalf of the Union. The Union agrees not to discriminate against any employee because of lack of Union membership or lack of activities on behalf of the Union.

### SECTION XXI. SALARY COMPENSATION

A.   **Appointment Step for New Employees**

Normally new and/or promoted employees will be appointed to the initial step of the salary range in effect for the particular classification in which the appointment is made. When circumstances warrant, the Executive Director may authorize the filling of the position at a step which is higher than the initial recruiting step in the salary range.

B.   **Salary Ranges**

1.   The ten (10) step salary ranges for classifications represented by the Union are listed in Attachment A of this Agreement.

2.   These salary ranges agreed to by the Union and the Employer will be in effect for the period July 1, 2008 through June 30, 2009 and will reflect an across the board three point seven percent (3.7%) increase as shown on Attachment A.

3.   Attachment A will be revised and replaced each year to reflect the annual Cost of Living Adjustments (COLA) awarded on July 1st of 2009, 2010, and 2011.

C.   **Cost of Living Adjustment (COLA)**

Effective July 1, 2009 through June 30, 2012, all classifications covered by this Collective Bargaining Agreement will receive a Cost of Living Adjustment as determined by the U.S. Department of Labor Bureau of Labor Statistics "Western A Urban Wage Earnings and Clerical Worker Index" as reported between March and March of each year, with a minimum (floor) of one point six percent (1.6%), and no more than a maximum (ceiling) adjustment of four point six percent (4.6%), inclusive. These adjustments will occur on July 1st of each year of the Agreement beginning 2009.

The agreement to and use of an annual COLA adjustment within this Collective Bargaining Agreement is not binding nor precedent setting for future contracts.

D.   **Method for Conducting Future Salary Surveys**

In order to ensure the WIB remains financially competitive in the competing and surrounding markets, the following process and classifications will be used to conduct a survey:

1.   The Employer and the Union will meet and agree on the survey tool to be used for the Program Year 2012 Salary Survey. The survey for each program year will be limited to the Admin/Program Specialist II classification and the Admin/Program Technician II classification. The Union and the WIB will meet at least 120 days prior to the end of this Agreement and determine the comparable agencies to be included in the Salary Survey. It is agreed that the comparable agencies used for this survey will be as follows:

The Employer and the Union will each select two Workforce Development Agencies to be included in the survey as well as the County of Solano.

2.   The Employer's Business & Employment Services Manager and/or designee will be responsible for conducting the survey among the agreed to comparable agencies.

3.   The Business & Employment Services Manager and/or designee will be responsible for analyzing the results of the surveys and preparing a comparison chart.   The comparison chart, as well as the overall and individual survey results will be shared with the Union.

E.   **Specific Project Salary Adjustments (for Interim Project Lead Assignments)**
1.   At the sole discretion of the Executive Director, and based on the need of the agency, interim Project Lead Assignments may be created in the Admin/Program Specialist II classification.   These assignments would provide the designated employee an opportunity to lead a specific project within the division or unit of the agency, and would also provide the employee with an opportunity to develop/enhance their coordination skills, and/or supervisory abilities.

2.   Employees appointed to these interim assignments, will receive a 5% upward salary adjustment over their regular salary for the period they are performing the lead functions.   Once the temporary assignment is completed, they will return to their regular salary.

3.   Employees designated to a interim project lead assignment must receive prior written notification from the Executive Director, via the Business & Employment Services Manager. This official notification will confirm the employee's appointment to the project, the start and end date of the project as well as the employee's interim salary adjustment.   A copy of this notification will also be placed in the employee's Personnel file.   Under no circumstances can anyone other than Executive Director (i.e., employee Supervisor or Division Manager) assign an individual to an interim project lead assignment.   The appointment or non-appointment to an interim  lead assignment is at the sole discretion of the Executive Director and is not subject to the grievance procedure.

## SECTION XXII.  EMPLOYMENT STATUS CHANGES

A.   **Promotion**
Promotion from within is advancement from one classification covered by this Agreement to another classification covered by this Agreement with a higher salary range.   An employee who is promoted shall be placed on the wage schedule applicable to the new position, but in no event shall he/she receive an increase of  less than five percent (5%) in compensation.

Incumbent employees promoted to new classifications covered by this Agreement will be required to serve a new probationary period as described in Section V of this Agreement.

Promotion to positions not covered by this Agreement are not subject to this Agreement, including the grievance procedure.

**B.**  **Demotion**

Demotion is movement from one job classification covered by this Agreement to a classification covered by this Agreement with a lower salary range. A demotion may occur as a voluntary request by the employee to move to a vacant functional assignment with the approval of the Executive Director, as well as based on the result of disciplinary action or as a result of bumping due to layoff. Demotion from a functional assignment not covered by this Agreement is not subject to this Agreement including the grievance procedure. Incumbent employees who are demoted to a lower classification in which they have not demonstrated their ability to adequately perform the essential functions of the functional assignment, must serve a six (6) month probationary period in the new functional assignment.

**C.**  **Transfer**

Transfer is movement of an employee from one functional assignment in a classification covered by this Agreement to a different functional assignment within the same classification. Incumbent employees who transfer to a new functional position in which they have not previously demonstrated their ability to adequately perform the essential functions of the functional assignment must serve a six (6) month probationary period in the new functional assignment. Employees who transfer prior to completing an initial six (6) month probationary period with the Employer will begin a new six (6) month probationary period at the time of the transfer. Should there be a budgeted vacancy, an employee who transfers to a new functional assignment and does not pass probation, for reasons other than gross misconduct or placed on a plan of correction, may return to their former functional assignment.

**D.**  **Lateral**

A lateral is movement of an employee in the same functional assignment covered by this Agreement to a different program or project operated by the Employer. Since there is no significant difference between the functional assignments no additional probationary period is required at the time the lateral takes place.

**E.**  **Posting of Open Functional Assignments**

The Employer has the right to choose which employee, if any, will be transferred, lateraled, or promoted into any vacant functional assignment. The Employer will post an internal and/or external recruitment notice for at least five (5) working days or longer at the Employers discretion, on official Employer designated bulletin boards of all functional assignments occurring in classifications covered by this Agreement. The postings shall specify the classification, functional assignment, unit (if relevant), current work location of the vacancy, and time deadlines for employees to submit a complete application package and cover letter to the Business & Employment Services Manager expressing their interest in one or all of the posted vacancies. Employees who are on any kind of disciplinary status are not eligible for transfer or promotion into posted functional assignments.

## SECTION XXIII.  HOLIDAYS/VACATION/SICK LEAVE
## AND OTHER LEAVES

A.    **Paid Leaves**

1.    **Holidays:**    The following federal and agency authorized days shall be recognized as paid holidays:

|     |     |     |
| --- | --- | --- |
| a. | New Year's Day | January 1st |
| b. | Martin Luther King's Birthday | Third Monday in January |
| c. | Washington's Birthday | Third Monday in February |
| d. | Cesar Chavez Holiday | Last Monday in March |
| e. | Memorial Day | Last Monday in May |
| f. | Independence Day | July 4th |
| g. | Labor Day | First Monday in September |
| h. | Veteran's Day | November 11th |
| i. | Thanksgiving Day | Fourth Thursday in November |
| j. | Friday after Thanksgiving | Fourth Friday in November |
| k. | Christmas Day | December 25th |
| l. | Floating Holidays | Beginning January 1, 2002 and annually thereafter, regular full-time employees will receive four (4) Floating Holidays which must be taken in the calendar year or lost. Part-time employees receive prorated Floating Holidays. New hires will receive prorated Floating Holidays, based on their hire date. Under this Agreement, Floating Holidays can not be carried over from year to year, nor are they cashed out at the time of termination. |

If a recognized holiday, (non-floating), falls on a Saturday, it will be observed on the preceding Friday. If such a holiday falls on a Sunday, it will be observed on the next Monday. Recognized holidays are not considered time worked in the computation of overtime. An employee whose regularly scheduled day off falls on a recognized holiday shall be credited with accrued holiday leave equivalent to the number of hours they would have been scheduled to work that day.

2.    **Vacation**

a.    Regular full-time employees will accumulate vacation leave based on the following schedule:

Page 22 of   34

| Length of Employment | Annual Accrued Vacation Time | Hours Accrued Each Bi-Weekly Pay Period |
|---|---|---|
| 0 through 2 Years | 80 hours | 3.08 hours |
| 3 through 5 Years | 120 hours | 4.62 hours |
| 6 through 10 Years | 168 hours | 6.46 hours |
| 11 through 15 Years | 192 hours | 7.38 hours |
| 16 Years and Above | 200 hours | 7.69 hours |

b.  Regular employees shall accrue vacation at the above rate or at a prorated level, beginning with the first day of employment with the Employer. Employees may begin to use accrued vacation leave after having successfully completed their initial six (6) month probationary period of employment. An employee who voluntarily quits, is terminated, or is laid off with an accrued vacation leave balance shall be paid said balance in his/her final pay check.

c.  During years one (1) through seven (7) an employee ceases to accrue additional vacation time, once they have reached a vacation balance of 200 hours. Beginning year eight (8) and thereafter an employee ceases to accrue additional vacation time, once they have reached a vacation balance of 224 hours.

d.  Regular part-time employees will accrue vacation based on a proration of the actual number of non-overtime hours worked in the pay period.  Thus, an employee whose regular work schedule is one-half (1/2) the normal full-time schedule shall accrue vacation at one-half (1/2) the full time rate upon completing the initial probationary period.

e.  Vacation leave must have prior approval from the employee's immediate supervisor. Supervisors shall respond to an employee's request for vacation leave, within ten (10) working days of the request being submitted in writing to the supervisor providing the request is no more than 150 days in advance and the employee has or will have the accrued time available.

f.  Vacation requests will not be denied solely based on the duration of the time requested by the employee.

3.  **Sick Leave**
Sick leave shall apply only to instances wherein an employee or family member

because of illness or injury is unable to report to work to perform his/her regular duties. Illness is defined as any pronounced deviation from a healthy state or exposure to contagious disease, which makes it disadvantageous to the employee and/or the Employer for the employee to report to work.

a.   Regular employees will accrue sick leave at a rate of one (1) day or eight (8) hours per month or at a prorated level beginning with the first day of employment.

b.   Sick leave may accumulate from year-to-year to a maximum equivalent of two and a half (2 ½) years' accrual. Sick leave may be used only for illness or injury, medical and/or dental appointments of the employee, or a family member as defined by this section and are subject to the approval of the employee's immediate supervisor.   Leave requests in excess of five (5) working days require the approval of the Business & Employment Services Manager.

c.   Sick leave is also available for employee use due to illness or injury of a family member. "Family" for purposes of this provision is defined as parents, legal guardian, children (including adopted, foster and stepchildren), spouse, siblings, and/or a person permanently residing in the employee's household as a dependent or person assuming the role of spouse.

d.   Regular part-time employees will accrue sick leave proportionate to the number of hours scheduled work.   Overtime work is not included in the calculation of sick leave.

e.   If an employee has been absent on sick leave for more than (5) consecutive work days, he/she must provide a medical practitioner's release to return to work to the Business & Employment Services Manager when he/she returns to work. The employee will not be returned to work without such a release and the failure to return such an employee to work absent a release shall not be subject to the grievance procedure.

f.   If the Employer has a reasonable suspicion for believing that an employee is abusing sick leave, the employee may be put on notice that medical verification will be required for all future uses of sick leave, for a specific period of time not to exceed one (1) year.

g.   Employees who engage in any type of gainful business or employment activities while on sick leave during their scheduled WIB work hours will be discharged.

4.  **Bereavement Leave**

    a.    Employees shall be entitled to four (4) days of paid bereavement leave, not chargeable to vacation or sick leave in the event of the death of one of the following members of the employee's family; parent, grandparent, natural, step, adopted children and grandchildren of the employee; natural and step brothers and sisters of the employee; present spouse or person assuming the role of spouse of the employee; ex-spouse who is a natural parent of a minor child in the custody of the employee; natural parents and grandparents of the employee's spouse; natural brothers and sisters of the employee's spouse; present spouses of the employee's natural brothers and sisters; son-in-law and daughter-in-law of the employee.

    b.    Such leave shall be a maximum of thirty-two (32) hours paid leave which can be used over a 10 day period, whether services are within or outside of the State of California.   Employees desiring more time off under these circumstances may request vacation or other appropriate leaves, which may or may not be granted at the sole discretion of the immediate supervisor, and that the additional leave does not pose a hardship for the Employer.   If the requested additional leave is denied, that denial is not subject to the grievance procedure.

5.  **Jury Duty**

When an employee covered by this Agreement is summoned to jury duty by proper judicial authorities, he/she shall be granted "other paid time off" not to exceed thirty (30) calendar days. The employee will receive his/her regular salary less the payment received for jury duty, except travel pay.  The employee shall be expected to report to work before or after jury duty, if one (1) hour or more of the work day remains, excluding travel time from the courthouse to the employee's assigned work location. If an employee is absent from work due to a jury summons, the employee must provide the court documentation demonstrating that jury service has been ordered and that the employee participated in the jury selection process or served on a jury.

This provision is not applicable to an employee's appearance in litigation as a litigant or witness.   However, if an employee is required within the scope of his/her employment to appear in litigation as a witness on behalf of the Workforce Investment Board of Solano County, he she will be paid his/her regular salary.

6.  **Military Leave**

    a.    Any employee ordered into the armed forces of the United States by virtue of draft or reserve obligations shall be granted an unpaid leave of absence for the duration of the military assignment. Upon completion of military service, the

employee will be reinstated with full seniority to his/her former position or to a comparable position if application for re-employment is made within ninety (90) calendar days of release from the service. This provision is not applicable to employees who voluntarily enlist in the armed services. Such enlistment shall be considered a voluntary quit/resignation.

b.    An employee who is a member of the National Guard or of a reserve component of the armed forces shall, upon furnishing a copy of their official orders or instructions, be granted an unpaid military training leave. Upon presentation of military pay vouchers, employees will be reimbursed the difference between their normal compensation and the pay they receive while on military duty. Such compensation will be limited to fifteen (15) days per year.

c.    Employees on military leave will continue to accrue service time, vacation and sick leave benefits for up to fifteen (15) working days within a calendar year.

**B.**    <u>**Unpaid Leave**</u>
    **1.**    <u>**Statement of Policy**</u>
        It is the policy of the WIB to consider and possibly grant an unpaid leave of absence (maternity/paternity, medical/personal) to regular employees in good standing who meet the requirements.

    **2.**    <u>**General Provisions**</u>
        Unless required by statute, regular employees on unpaid leaves of absence do not accrue service time, or vacation and sick leave benefits while on unpaid leave. Eligibility for benefits, and the calculation of service time, resumes immediately upon return from the leave.

        a.    An employee requesting a leave of absence must submit the request in writing to his/her supervisor, and Division Manager at least 30 days prior to the desired commencement of the requested leave. If the request is agreed to by the supervisor, and Division Manager, it will be forwarded to the Executive Director for consideration and approval/denial. The employee will be notified within seven (7) working days of the submission of their leave request if it has been approved/denied by the Executive Director.

            In cases of sudden illness or emergency, the leave request may be initiated by the employee's immediate supervisor and/or Division Manager. The supervisor or Division Manager must indicate on the form their recommendation as to whether the request should be approved, denied or

Page 26 of 34

modified.  The supervisor/Division Manager are responsible for ensuring the form is forwarded to the Business & Employment Services Manager immediately.

Authorization of an unpaid leave of absence is the sole discretion of the Executive Director or a person designated by the Employer and is not subject to the Grievance Procedure.  Employees released to return to work must report to the agency Human Resources staff office upon the start of their normal work schedule, on the day-of-return, and provide a Doctor's documentation of release to return and any required employment limitations/accommodations. Where applicable, all leave without pay options will be combined and run concurrently.

b.    All leaves of absence must have a specific duration and return-to-work date determined at the time the leave is granted.  Failure to return to work on the determined return-to-work day will be considered as a resignation by the employee. NOTED EXCEPTION: a women's timely return from pregnancy disability leave entitles her to her same job.

An employee who is on an authorized leave of absence and returns to work on their scheduled return to work date will be reinstated to his/her former functional assignment or to a similar functional assignment.

c.    Unless required by statute, the maximum medical, or maternity/paternity leave of absence is 4 months, and personal leaves are limited to no more than 30 days in a calendar year.

d.    All original requests for a leave without pay, as well as any subsequent correspondence regarding the leave, will be forwarded to the Employer's Business & Employment Services Manager and placed in a confidential employee file.

e.    Employees on an unpaid leave of absence who have automatic dependent health care payroll deductions, are responsible for submitting the monthly premiums to the Fiscal department no later than the 1st working day of each month.  Failure to do so will result in the termination of all applicable dependent health care coverage.

3.    **Allowable Leaves and Leave Durations**
      a.    **Personal Leave**
            A personal leave without pay up to a maximum of thirty (30) calendar days may be granted by the Executive Director, via the immediate supervisor, or Division Manager.

Page 27 of 34

b.   **CFRA/FMLA Leave**

Under the California Family Rights Act of 1993, and the federal Family Medical Leave Act of 1992, if you have more than 12 months of service with this Employer and have worked at least 1,250 hours in the 12-month period before the date you want to begin your leave, you may have a right to an unpaid family care or medical leave. This leave may be up to 12 workweeks in a 12-month period for the birth, adoption, or foster care placement of your child; your own serious health condition or that of your child, parent or spouse. This unpaid leave of absence will run concurrently with any paid leave or other unpaid medical or maternity and paternity leave allowed under this Agreement.

In compliance with the National Defense Authorization Act, Public Law 110-181 signed into effect on January 28, 2008, the Family Medical Leave Act of 1993 is being amended to include the following two new qualifying categories and leave durations.

1.   Eligible employees are entitled to up to 12 weeks of leave because of a qualifying exigency arising out of the fact the spouse, son, daughter, or parent of the employee is on active duty or has been notified of an impending call to active duty status in support of a contingency operation.

2.   An eligible employee who is the spouse, son, daughter, parent or next of kin of a covered servicemember who is recovering from a serious illness or injury sustained in the line of duty on active duty is entitled to up to 26 weeks of leave in a single 12 month period to care for the service member.

c.   **Maternity and Paternity Leave**

1.   An employee who is the natural parent of a newborn child or a recently adoptive parent of an infant child under the age of one (1) is eligible for this unpaid leave.  Any employee with at least twelve (12) months of continuous employment with the Workforce Investment Board of Solano County is eligible for maternity or paternity leave.

2.   Before a female employee can return to work following a maternity leave, a physician must provide certification advising that the employee is able to resume her work.  The employee must notify the Business & Employment Services Manager in writing of her intention to return to work at least ten (10) days prior to the expiration of the leave.

d.   **Medical Leave**
   1.   An employee with at least (12) months of continuous employment with the Workforce Investment Board of Solano County may be granted a medical leave of absence without pay.
   2.   Before an employee can return to work following a medical leave, a physician must provide certification advising that the employee is able to resume his/her work.  An employee must notify the Business & Employment Services Manager in writing of his/her intention to return to work at least ten (10) days prior to the expiration of the leave. The employee must also provide a physician's statement clearly indicating any type of accommodation or modified work schedule the employee may require upon their return.   The anticipated length of the accommodation/modified work schedule must also be specified.

## SECTION XXIV.  FRINGE BENEFITS

A.   **Medical Benefits**
Medical insurance coverage is available to all regular employees at the time of hire. Once the plan required waiting period is satisfied, coverage begins. The WIB pays 100% of the cost for the employee premium only.  Employee dependent coverage is optional under the medical insurance plan, and if selected, is paid by the employee through appropriate payroll deductions.  Employees have 30 calendar days from the time of hire to enroll with one of the two providers available or they must wait until the next new open enrollment period.

B.   **Dental Benefits**
Dental insurance coverage is available to all regular employees at the time of hire. The WIB pays 100% of the premium cost for dental insurance for the employee, and if requested fifty percent (50%) of the employee's dependents premium.  Once the plan required waiting period is satisfied, coverage begins.  Employees have 30 calendar days from the time of hire to enroll with the WIB dental provider or they must wait until the next open enrollment period.

C.   **Vision Benefits**
Vision insurance coverage is available to all regular employees at the time of hire.  Once the plan required waiting period is satisfied, coverage begins.  The WIB pays 100% of the employee only premium cost.  Employee dependent coverage is available under the vision insurance plan, and if selected, is paid by the employee through appropriate payroll deductions.  Employees have 30 calendar days from the time of hire to enroll with the WIB vision provider or they must wait until the next new open enrollment period.

D.   **Life Insurance**
Life insurance is available to all regular employees once they complete their initial six month introductory period of employment with the WIB.  The WIB pays 100% of the premium cost for the $15,000 life insurance policy.  This policy does not allow a dependent coverage option.

**E.**   **Retirement**

The WIB provides a Tax Deferred Annuity (or 403(b)) Retirement Plan. In compliance with the retirement plan guidelines, all qualified and interested employees are eligible to participate.

**F.**   **IRS approved 125 and 129 Plan**

Upon appointment, employees are immediately eligible to participate in the premium deduction portion of the 125 IRS plan. After an employee has completed their six (6) month introductory period with the WIB they are eligible to participate in the flexible spending portions of both the 125 and 129 Plans.

**G.**   **Miscellaneous Benefits**

Required State and federal benefits and or tax deductions such as, workers compensation, state disability insurance, unemployment insurance, social security, etc. will continue to be paid by the Employer or payments will continue to be deducted from employee pay checks.

**H.**   **Tuition Reimbursement**

1.   Employees who have been employed by the Employer for at least twelve (12) consecutive months of active employment may submit written requests for tuition, books and fees reimbursement for pre-approved and completed courses that will upgrade the employee's skills and knowledge and will be beneficial to the Employer. After submitting proof to the Employer of successful completion of the previously approved course(s), an employee may receive up to One Hundred Dollars ($100.00) reimbursement for tuition, books and fees not to exceed $300.00 per calendar year for completed courses with a grade of "C" or better.

Whether the training is considered beneficial to the Employer is within the Employer's sole discretion and is not subject to the grievance procedure.

2.   Reimbursement will only be made upon the employee's submission of:

a.   A written request for professional development reimbursement including an identification of the class(es) to be attended and where, as well as a description of the job-relatedness of the class(es) and how knowledge of the subject area will both enhance the employee's performance and benefit the agency. This request must be submitted prior to the commencement of the class and approved by the employee's immediate supervisor, Division Manager, and authorized by the Executive Director.

b.   Evidence of class enrollment.

     c.      A grade report or other formally issued transcript reflecting no less than a "C" grade in the class(es) attended.

     d.      Evidence of payment of tuition, books and/or fees by the employee.

     e.      All original documents requesting the professional development authorization as well as copies of the tuition reimbursement will be maintained by the Employer's Business & Employment Services Manager and placed in the employees Personnel File. The Business & Employment Services Manager or his/her designee will be responsible for forwarding all original reimbursement requests to the Fiscal Department for payment within ten (10) working days of their receipt.

3.     Unpaid release time from work up to a maximum of six (6) hours per week including travel time may also be granted to employees who meet the following criteria:

     a.      Have been employed for a minimum of two (2) continuous years with the WIB;

     b.      Are performing their job at a satisfactory level and have not been on a plan of correction for at least one full year;

     c.      There is a direct professional applicability of class(es) attended to employee's current functional job description, job cluster or vocational training area; and

     d.      The release time is recommended by the employee's immediate supervisor and Division Manager.

## SECTION XXV.  MISCELLANEOUS

A.    **DRESS CODE**

In the interest of presenting a professional image to Board clients, partners and the community, all employees of the WIB are required to observe good habits of grooming and personal hygiene. Employees are expected to dress conservatively and professionally in an appropriate manner for the business office.

B.    **JOB NOTICES**

The Employer will send the Union a copy of all recruiting job notices for classifications represented by the Union in this Agreement.

**C.    NO STRIKE/NO LOCKOUT**

Under no circumstances will the Union or its agents cause, sanction, or permit its members to cause any strike, slowdown, stoppage of work, or other economic action directed at any activity of the Employer during the term of this Agreement.  An employee who withholds services without the approval, permission or sanction of the Union shall be considered a voluntary quit, without recourse through the grievance procedure.  Under no circumstances will the Employer engage in a lockout during the term of this Agreement.

**D.    SEVERABILITY**

If any provision of the Agreement should be held invalid by operation of law or by any tribunal of competent jurisdictions, or if compliance with or enforcement of any such revisions shall be restrained, the remainder of this Agreement shall not be affected thereby.

## SECTION XXVI.  TERM OF AGREEMENT

This Agreement shall remain in full force and effect to and including September 30, 2013.   The annual salary adjustment as described in Section XXI. C. Cost of Living Adjust (COLA) shall remain in effect through June 30, 2012.  This Agreement may be reopened by either party for the purpose of only negotiating the Grievance Procedure - Formal Resolution Step 2 as provided in Section XIX. E. Thereafter, it shall automatically renew itself and continue in full force and effect from year to year unless written notice of intention to terminate or modify any provision of this Agreement is given by either party and received by the other no later than one hundred and twenty (120) days prior to its termination date on the close of business of September 30, 2013.

## SECTION XXVII. COMPLETE AGREEMENT

During the negotiations culminating in this Agreement, the Employer and the Union each enjoyed and exercised the unlimited right and opportunity to make demands and proposals, counter-demands and counter proposals, with respect to any subject matter as to which the National Labor Relations Act imposes an obligation to bargain.

Unless specifically set forth elsewhere in this Agreement, no further negotiations shall take place on any subject within the scope of bargaining during the term of the Agreement.  Consequently, the Employer expressly waives its right to require the Union to bargain collectively and the Union expressly waives its right to require the Employer bargain collectively over all matters as to which the National Labor Relations Act imposes an obligation to bargain, with respect to: (a) matters which are specifically referred to in this Agreement; or (b) matters which were discussed between the Employer and the Union during the negotiations which resulted in this Agreement; or (c) matters which were within the contemplation or knowledge of the Employer or the Union at the time this Agreement was negotiated and executed.  The waiver of the right to "bargain collectively" includes the waiver of the right to require the other party to negotiate, and the right to obtain information from the other party, except to the extent required to enforce the terms of this Agreement or to obtain information required

Page 32 of  34

to prepare to bargain for a successor Agreement in a manner and at a time which is timely with respect to such negotiations.  Nothing in the Agreement precludes the parties from mutually agreeing to re-open negotiations on any subject.  The Employer and Union agree that notwithstanding this provision, either party may require negotiations concerning events that were outside the knowledge of both parties at the time the Agreement was signed.

This Agreement contains the entire understanding, undertaking, and agreement of the Employer and the Union, after exercise of their right and opportunity, and finally determines all matters of collective bargaining for its term.

Changes in this Agreement, whether by addition, waiver, deletion, amendment, or modification, must be reduced to writing and executed by both the Employer and the Union.

IN WITNESS THEREOF, the parties have executed this Agreement.

**FOR THE Employer**
Workforce Investment Board of Solano County, Inc.

By:    Robert Bloom, Executive Director

_____
Signature

1/18/13
Date

Cheryl Joseph, Business & Employment Services Manager

1/18/13
Date

Kitt Lee, Fiscal & Information Services Manager

1/18/13
Date

**FOR THE Union**
Service Employees International Union (SEIU), Local, 1021,CTW, CLC

By:    Stephen Cutty, Field Representative

_____
Signature

1-18-13
Date

Twuanya Gibbons, Negotiation Team Member

1.18.2013
Date

Vallarie Henderson, Negotiation Team Member

1.18.13
Date

Scotty Sanderson, Negotiation Team Member

1/18/13
Date

Pete Castelli, Executive Director
Field and Programs
SEIU Local 1021

1/18/13
Date

Brian Lee, Area Director
SEIU Local 1021

1-18-13
Date

Page 34 of 34

ATTACHMENT A

# Workforce Investment Board of Solano County

## SEIU Covered
## Classifications and Salary Ranges
## Program Year 2012-13

| Classification | Step 1 | Step 2 | Step 3 | Step 4 | Step 5 | Step 6 | Step 7 | Step 8 | Step 9 | Step 10 |
|---|---|---|---|---|---|---|---|---|---|---|
| Admin/Program Specialist II | $45,921 | $47,069 | $48,246 | $49,452 | $50,688 | $51,955 | $53,254 | $54,586 | $55,950 | $57,349 |
| Admin/Program Specialist I | $41,329 | $42,362 | $43,421 | $44,507 | $45,619 | $46,760 | $47,929 | $49,127 | $50,355 | $51,614 |

| Classification | Step 1 | Step 2 | Step 3 | Step 4 | Step 5 | Step 6 | Step 7 | Step 8 | Step 9 | Step 10 |
|---|---|---|---|---|---|---|---|---|---|---|
| Admin/Program Technician III | $38,665 | $39,632 | $40,622 | $41,638 | $42,679 | $43,746 | $44,840 | $45,961 | $47,110 | $48,287 |
| Admin/Program Technician II | $35,150 | $36,029 | $36,929 | $37,853 | $38,799 | $39,769 | $40,763 | $41,782 | $42,827 | $43,898 |
| Admin/Program Technician I | $31,634 | $32,425 | $33,235 | $34,066 | $34,918 | $35,791 | $36,686 | $37,603 | $38,543 | $39,507 |

Effective 7/01/12

35

# Exhibit B



**LOCAL 1021**

**SEIU**

**Stronger Together**

**Sin Yee Poon**
Chief Elected Officer

**Roxanne Sanchez**
President

**Gary Jimenez**
1st Vice President

**Crawford Johnson**
2nd Vice President

**Larry Bradshaw**
3rd Vice President

**Pamela Holmes-Morton**
Secretary

**Kathy O'Neil**
Treasurer

**Alysabeth Alexander**
Political Action Committee

**Mary S. Tucker**
Organizing Committee Chair

**Executive Board**
Saul Almanza
Nancy Atwell
Harry Baker
Kathy Basconcillo
Akbar Bibb
Karen Bishop
Ken Blomberg
· Gina Castillano
Gayle Chadwick
Gregory Correa
Sheila Darvell
Amy Dooha
David Fleming
John Gales
Dolores Dawson Gholar
Gladys M. Gray
David Hight
Karen Joubert
Andrea Longoria
Jim Nebel
Michelle Rodriguez
Jacqueline Sowers
Eric Stern
Ken Tam
Oliver Tarap
Renita Terry
Mynette Theard
Celeste Thompson
David Turner
Denis Villanueva

April 25, 2013

Mr. Robert Bloom
Executive Director
Workforce Investment Board
320 Campus Lane
Fairfield, CA 94534

Dear Mr. Bloom:

Please consider this letter as initiating the **Formal Resolution Process** for the below listed grievances. The Collective Bargaining Agreement requires you or your designated representative to schedule a meeting to hear the grievance within the ten (10) working days after receiving it, Section XIX Grievance Procedure (C) Step 1. I am available at the following times and dates within the next 10 working days: April 26, 2013 at 9:00 am, 1 pm or 3 pm; April 29, 2013 at 9:00 am, 1 pm or 3 pm;  April 30, 2013 at 9:00 am, 1 pm or 3 pm; May 1, 2013 at 9:00 am; May 2, 2013 at 9:00 am, 1 pm or 3 pm; May 3, 2013 at 9:00 am, 1 pm or 3 pm; May 6, 2013 at 9:00 am, 1 pm or 3 pm; May 7, 2013 at 9:00 am, 1 pm or 3 pm; May 8, 2013 at 9:00 am, 1 pm or 3 pm; May 9, 2013 at 9:00 am, 1 pm or 3 pm; May 10, 2013 at 9:00 am, 1 pm or 3 pm. Please contact me with the date/time that is convenient for your agency.

As you are well aware of, the Union has attempted to resolve these grievances by the Informal Resolution process on numerous occasions with your agency but you have maintained communications are to be sent only to the Executive Director or an employee must initiate the grievance in order for it to be valid. We are in disagreement with your interpretation and application of the grievance procedure in the Collective Bargaining Agreement. The intent of the grievance language of the Collective Bargaining Agreement is for "the parties... to settle grievances informally and promptly." The position your agency has taken, with respect to informal grievances, has not been productive for either party and should cease immediately.

**Formal Grievance #1: Job Placement Coach-LaShunda Norris**

The Union contends Workforce Investment Board has violated the Collective Bargaining Agreement Section XXII Employment Status Changes (E.) "Posting of Open Functional Assignments," Section XXV (B.) "Job Notices and Section II. Management Rights by not posting internal or an external recruitment notice for at least five (5) working days on official Employer Designated bulletin boards of all functional assignments occurring in classifications covered by the collective bargaining agreement and failed to notify the Union of Job Notices. The Employer has effectively waived its rights to handling the grievance through the "informal resolution process" by refusing to process the informal request on or about April 22, 2013.The remedy sought by the Union is reassignment of Ms. Norris to her previous position of Workshop Specialist II, posting of "Job Placement Coach" as required by the Collective Bargaining Agreement for all employees to have ample opportunity to apply for the newly created position, provide proper notice to the Union of the Job opening and to

**Budget & Finance Committee**
Peggy La Rossa  Mary Jane Logan  Mercedes Riggleman  Nadeen Roach  Dann Solomon  Michael Tong
2300 Boynton Avenue, Suite 200 • Fairfield, CA 94533 • 707-422-9464 • Fax 707-422-5107
Service Employees International Union CtW, CLC • www.seiu1021.org

make whole any/all employees who were affected by Workforce Investment Board violation of the Collective Bargaining Agreement.

## Formal Grievance #2: Change in Work Hours-Disparate Treatment

The Union contends Workforce Investment Board has violated the Collective Bargaining Agreement Section XI Hours of Work (B.), Section XX (B.) No Discrimination and Section II. Management Rights by restricting certain employees from entering premises prior to their shift while allowing other employees unrestricted access to the same facilities. Additionally, the
Employer has not negotiated changes of past practices in reporting time by employees. The Employer has effectively waived its rights to handling the grievance through the "informal resolution process" by refusing to process the informal request on or about April 22, 2013. The remedy sought by the Union is standard and uniformed language applicable to all employees covered by the Collective Bargaining Agreement and uniformed application of reporting times.

## Formal Grievance #3: Employer Paid Medical Benefits Loretta Dawson

The Union contends Workforce Investment Board has violated the Collective Bargaining Agreement Section XXIV Fringe Benefits (A.) Medical Benefits and Section II. Management Rights by failing to pay medical insurance premium of Loretta Dawson while on a Worker's Compensation injury and placing Ms. Lawson on "Unpaid Leave" status while receiving compensation. The Employer has effectively waived its rights to handling the grievance through the "informal resolution process" by refusing to process the informal request on or about April 22, 2013. The remedy sought by the Union is the reimbursement of any/all payments made by Ms. Dawson to Workforce Investment Board to maintain her health insurance while on worker's compensation.

## Formal Grievance #4: Job Placement Coach –April Zolmek-Portillo

The Union contends Workforce Investment Board has violated the Collective Bargaining Agreement Section XXII Employment Status Changes (E.) "Posting of Open Functional Assignments," Section XXV (B.) "Job Notices and Section II. Management Rights by not posting internal or an external recruitment notice for at least five (5) working days on official Employer Designated bulletin boards of all functional assignments occurring in classifications covered by the collective bargaining agreement and failed to notify the Union of Job Notices. The Employer has effectively waived its rights to handling the grievance through the "informal resolution process" by refusing to process the informal request on or about April 22, 2013.The remedy sought by the Union is reassignment of Ms. Zolmek-Portillo to her previous position of Business Services Representative, posting of "Job Placement Coach" as required by the Collective Bargaining Agreement for all employees to have ample opportunity to apply for the newly created position, provide proper notice to the Union of the Job opening and to make whole any/all employees who were affected by Workforce Investment Board violation of the Collective Bargaining Agreement.

## Formal Grievance #5: Sheryl Cutler's Personnel File

The Union contends Workforce Investment Board has violated the Collective Bargaining Agreement Section XVII (A.) Personnel File and Section II. Management Rights by not allowing the Union access to file for Inspection and copying in a timely manner in order to process grievance related to adverse employment action by Workforce Investment Board. The remedy sought is the production of the personnel file of Sheryl Cutler.

## Formal Grievance #6: Loretta Dawson's Personnel File

The Union contends Workforce Investment Board has violated the Collective Bargaining Agreement Section XVII (A.) Personnel File and Section II. Management Rights by not allowing the Union access to file for inspection and copying in a timely manner in order to process grievance related to adverse

employment action by Workforce Investment Board. The remedy sought is the production of the personnel file of Loretta Dawson.

### Formal Grievance #7: Informal Grievance Process

The Union contends Workforce Investment Board has violated the Collective Bargaining Agreement Section XIX Grievance Procedure (A) Definition, (B) Eligibility, (C) Procedures-Informal Resolution Process, Section XX (B.) No Discrimination and Section II Management Rights by refusing to process grievances on an "informal basis" in a timely manner to resolve issues at the lowest possible level. The remedy sought by the Union is the recognition by Workforce Investment Board of the rights of Union Representative to present grievances to management by the "Informal Resolution Process" as specified in the Collective Bargaining Agreement.

### Formal Grievance #8: Sheryl Cutler's Adverse Employment Action

The Union contends Workforce Investment Board has violated the Collective Bargaining Agreement Section XVIII (B.) Disciplinary Procedures, Section XVI (A) & (B) Staff Reduction or Layoff and Procedures, and Section II Management Right's by misclassifying Ms. Cutler's disciplinary action as "detrimental to clients," and "entailing gross misconduct" thus depriving Ms. Cutler a reasonable time to improve her performance under the terms and conditions of the Collective Bargaining Agreement. The remedy sought by the Union is the reinstatement of Ms. Cutler as an Employability Specialist II, to be made whole for any/all economic losses including benefits minus interim wages received by Ms. Cutler and to provide 45 work day plan of correction as outlined in the Collective Bargaining Agreement.

If you have any questions concerning the above grievances please contact me immediately at stephen.cutty@seiu1021.org or by phone at (707) 427-7209.

Sincerely,

Stephen Cutty
Field Representative
SEIU Local 1021

Cc:   Ms. Sonja Rockwall-Jackson, Chief Steward WIB
      Ms. Antoinette Smith, Steward WIB

SJC (cwa 9404)

# Exhibit C

**WORKFORCE INVESTMENT BOARD**
OF SOLANO COUNTY

May 3, 2013



Mr. Stephen Cutty
Field Representative
Service Employees International Union, Local 1021
2300 Boynton Avenue, Suite 200
Fairfield, CA 94533

SUBJECT:    1) **Forthcoming Response to Your April 25, 2013 Letter; and**
            2) **Need to Redirect Your Communication Contained in**
            **April 29, 2013 Letter**

Dear Mr. Cutty,

I wish to provide you an update on the follow-up steps necessary to be taken with each of the above referenced letters (which are attached.)

**April 25, 2013 Letter**
Our agency attorney Mr. Randall Barnum is preparing a response to this letter that will be provided to both you and your attorney – putting in to proper perspective the various issues you continue to repetitively raise in: a) requests to me; b) attempts at filing formal grievances; and c) direct NLRB filings.

You will be receiving a copy of this correspondence shortly.

**April 29, 2013 Letter**
In accordance with the current Collective Bargaining Agreement (CBA) I have no role in helping with an issue an SEIU-covered employee may have regarding work-related issues or any purported violation of the CBA at this stage - based on the information you briefly raise in this 4/29/13 letter.

Should you know of a covered employee with a concern please direct that individual to contact his/her supervisor to discuss the matter and seek clarification and hoped-for resolution.

If that employee has concern for a possible violation of any provision of the CBA then the prescribed Section XIX. C. Procedures – Informal Resolution Process would be undertaken. This specifically-crafted, negotiated, and mutually-agreed-to/signed-off-upon controlling language of the CBA only calls for the matter to be brought up verbally; the employee, supervisor, and Business and Employment Services Manager (Ms. Cheryl Joseph) would then meet in an attempt to settle the matter on an informal basis.

☐ North-county Office
320 Campus Lane
Fairfield, CA 94534
(707) 864-3370   FAX (707) 864-3386

☐ South-county Office
1440 Marin Street
Vallejo, CA 94590
(707) 649-3604   FAX (707) 649-3619

*L i n k i n g     E m p l o y e r s     w i t h     E m p l o y e e s*

Mr. Stephen Cutty                                                    Page 2
May 3, 2013

Failure to resolve the matter at that level could then prompt a written communication to me as Executive Director (within 7 working days of completion of this prescribed Informal Resolution Process), thus elevating the issue to the next prescribed step in the CBA (under Section XIX.C.  Procedures - Formal Resolution Process.)  Only at the Formal Resolution stage would I be allowed to become directly involved, to carry out various prescribed obligations from that point forward.

To my knowledge no part of this Informal Resolution Process has been initiated (for the issue you raise in this 4/29 letter) and no case can be made that "the grievance is not resolved" via this prescribed initial process.  Thus it is premature for any party to start issuing written communications and getting additional parties involved.  Parties should simply follow the clear language of the CBA and not in any way attempt to side-step or overlook applicable steps in the grievance procedures.

Again, I have no allowable direct role in the Informal Resolution Process under written terms of the CBA. Further, I have no intention to violate terms of the CBA by becoming directly involved in the prescribed three-party meeting/discussions at the informal stage.

A direct parallel exists here. There is similarly no allowable role for an agency SEIU Steward or you as an SEIU Field Representative to sit in upon or participate in the CBA-prescribed three-party meeting to attempt informal resolution.


Please advise your SEIU-covered employee of these critical guiding sections of the CBA.

Sincerely,

Robert L. Bloom
President

Attachments

cc     Cheryl Joseph
       Randall Barnum

# Exhibit D



## LOCAL 1021
## SEIU
**Stronger Together**

**Sin Yee Poon**
Chief Elected Officer

**Roxanne Sanchez**
President

**Gary Jimenez**
1st Vice President

**Crawford Johnson**
2nd Vice President

**Larry Bradshaw**
3rd Vice President

**Pamela Holmes-Morton**
Secretary

**Kathy O'Neil**
Treasurer

**Alysabeth Alexander**
Political Action Committee

**Mary S. Tucker**
Organizing Committee Chair

**Executive Board**
Saul Almanza
Nancy Atwell
Harry Baker
Kathy Basconcilo
Akbar Bibb
Karen Bishop
Ken Blomberg
Gina Castillano
Gayle Chadwick
Gregory Correa
Sheila Darvell
Amy Dooha
David Fleming
John Gales
Dolores Dawson Gholar
Gladys M. Gray
David Hight
Karen Joubert
Andrea Longoria
Jim Nebel
Michelle Rodrigues
Jacqueline Sowers
Eric Stern
Ken Tam
Oliver Tarap
Renita Terry
Mynette Theard
Celeste Thompson
David Turner
Denis Villanueva



May 7, 2013

Mr. Robert Bloom
Executive Director
Workforce Investment Board
320 Campus Lane
Fairfield, CA 94534

Dear Mr. Bloom:

I am in receipt of your May 3, 2013 letter responding to my letter of April 29, 2013 concerning the first step of the grievance process for several unresolved issues. It is my belief your letter satisfies the requirement as a step 1 response to the formal grievance procedure.

It is obvious the several disputes have not been resolved through the grievance process. I am requesting the appointment of an "Adjustment Board" as defined in step 2 of the grievance process to hear the matter and issue a "written advisory opinion." The Collective Bargaining Agreement states "the adjustment shall convene within twenty-five (25) working days of the timely request to the Executive Director. I believe this request is timely and appropriate as the next step in the formal process.

If you disagree or wish to deny this step of the grievance process, please notify me immediately of your decision so I may take appropriate actions in another venue.

If you have any questions concerning the above grievances please contact me immediately at stephen.cutty@seiu1021.org or by phone at (707) 427-7209.

Sincerely,

Stephen Cutty
Field Representative
SEIU Local 1021

Cc:    Ms. Sonja Rockwall-Jackson, Chief Steward WIB
       Ms. Antoinette Smith, Steward WIB

SJC (cwa 9404)

**Budget & Finance Committee**
Peggy La Rossa   Mary Jane Logan   Mercedes Riggleman   Nadeen Roach   Dann Solomon   Michael Tong
2300 Boynton Avenue, Suite 200 ▪ Fairfield, CA 94533 ▪ 707-422-9464 ▪ Fax 707-422-5107
Service Employees International Union CtW, CLC ▪ www.seiu1021.org

# Exhibit E



## WORKFORCE INVESTMENT BOARD
### OF SOLANO COUNTY

May 15, 2013

Mr. Stephen Cutty, Field Representative
Service Employees International Union, Local 1021
2300 Boynton Avenue, Suite 200
Fairfield, CA 94533

SUBJECT:   **1) Rejection of Your May 8, 2013 Request to Join In on Violations of
the Current Collective Bargaining Agreement; and
2) Notice Given: Plan to Reject all Future Such Requests**

Dear Mr. Cutty,
I am once more in receipt of a letter from you (dated May 8, 2013 – attached) which: a)
proposes violations to the terms of our current Collective Bargaining Agreement (CBA);
and b) asks me to be a co-conspirator in such a violation. This is to state unequivocally
that I will <u>not</u> be a party to such violations.

On a number of occasions now you have sent me correspondence asking for me
personally to get involved in the "Informal Resolution Process" step of the grievance
procedures. Further you have laid out an expectation that both you and an agency union
steward would likewise be involved in the Informal Resolution process.

As you are fully aware the freely negotiated, agreed-to, and signed-off-upon language of
the CBA prescribes what is involved in the Informal Process step for the grievance
procedures. There is simply no role for you, a steward, or me in that Informal step.

It must be noted that you personally agreed to the language of this current CBA, as
attested to with your signature of January 18, 2013. And yet now you refuse to live with
what you contractually bound yourself to.

It will continue to be my practice to fully comply with all provisions of the CBA. All
future requests from you for me to violate the CBA, on any basis, will be summarily
rejected for that cited reason.

Sincerely,

Robert L. Bloom
President

Attachment

cc    Cheryl Joseph
      Randall Barnum

☐ **North-county Office**
320 Campus Lane
Fairfield, CA 94534
(707) 864-3370   FAX (707) 864-3386

☐ **South-county Office**
1440 Marin Street
Vallejo, CA 94590
(707) 649-3604   FAX (707) 649-3619

*L i n k i n g     E m p l o y e r s     w i t h     E m p l o y e e s*

# Exhibit F



**LOCAL 1021**

**SEIU**

**Stronger Together**

**Sin Yee Poon**
Chief Elected Officer

**Roxanne Sanchez**
President

**Gary Jimenez**
1st Vice President

**Crawford Johnson**
2nd Vice President

**Larry Bradshaw**
3rd Vice President

**Pamela Holmes-Morton**
Secretary

**Kathy O'Neil**
Treasurer

**Alysabeth Alexander**
Political Action Committee

**Mary S. Tucker**
Organizing Committee Chair

**Executive Board**
Saul Almanza
Nancy Atwell
Harry Baker
Kathy Basconcillo
Akbar Bibb
Karen Bishop
Ken Blomberg
Gina Castillano
Gayle Chadwick
Gregory Correa
Sheila Darvell
Amy Dooha
David Fleming
John Gales
Dolores Dawson Gholar
Gladys M. Gray
David Hight
Karen Joubert
Andrea Longoria
Jim Nebel
Michelle Rodrigues
Jacqueline Sowers
Eric Stern
Ken Tam
Oliver Tarap
Renita Terry
Mynette Theard
Celeste Thompson
David Turner
Denis Villanueva

May 23, 2013

Mr. Robert Bloom
Executive Director
Workforce Investment Board
320 Campus Lane
Fairfield, CA 94534

Dear Mr. Bloom:

I am in receipt of your May 15th, 2013 letter which I consider it another refusal by your agency to process outstanding grievances as required by the Collective Bargaining Agreement.  It is my belief your letter satisfies the requirement as a step 2 response to the formal grievance procedure on all outstanding grievances your agency now has in its possession.

I am requesting Step 3 Arbitration for all grievances. The Collective Bargaining Agreement states "Upon receipt of a written request for arbitration of a grievance under this procedure, the Employer and the Union shall attempt to select a mutually acceptable impartial arbitrator. In the event that the parties cannot agree on an impartial arbitrator within fifteen (15) days after receipt of the written request, either party may request the American Arbitration Association to submit a list of five (5) representative arbitrators." I am available on the following dates and times to pick an impartial arbitrator: May 24, 2013 9 am; May 28, 2013 9 am or 1 pm; May 29, 2013 9 am or 1pm; May 30, 2013 9 am or 1 pm; May 31, 2013 9 am or 1 pm; June 3, 2013 9 am or 1 pm; June 4, 2013 9 am or 1 pm; June 5, 2013 9 am or 1 pm; June 7, 2013 9 am or 1 pm. Please let me know which date is convenient to pick an impartial arbitrator.

If you disagree or wish to deny this step of the grievance process, please notify me immediately of your decision so I may take appropriate actions in another venue.

If you have any questions concerning the above grievances please contact me immediately at stephen.cutty@seiu1021.org or by phone at (707) 427-7209.

Sincerely,

Stephen Cutty
Field Representative
SEIU Local 1021

Cc:    Ms. Sonja Rockwall-Jackson, Chief Steward WIB
       Ms. Antoinette Smith, Steward WIB

SJC