Randal M. Barnum     State Bar No. 111287
Carrie E. Croxall    State Bar No. 190430
LAW OFFICES OF RANDAL M. BARNUM
279 East H Street
Benicia, CA 94510
Telephone:   707.745.3747
Facsimile:   707.745.4580
rbarnum@rmblaw.com
ccroxall@rmblaw.com

Attorneys for Defendant: PRIVATE INDUSTRY COUNCIL OF SOLANO COUNTY, INC., dba WORKFORCE INVESTMENT BOARD OF SOLANO COUNTY (erroneously sued herein as WORKFORCE INVESTMENT BOARD, INC.)

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 1021,<br><br>Plaintiff/Petitioner,<br><br>v.<br><br>WORKFORCE INVESTMENT BOARD, INC.<br><br>Defendant/Respondent. | CASE NO. 2:13-cv-01670-WBS-EFB<br><br>**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO STAY ACTION OR, IN THE ALTERNATIVE, MOTION TO DISMISS AND OPPOSITION TO PLAINTIFF'S FIRST "CHANGED" COMPLAINT TO COMPEL ARBITRATION**<br><br>Date:  October 7, 2013<br>Time:  2:00 p.m.<br>Dept.:  Courtroom 5<br>Judge:  Hon. William B. Shubb |

- 0 -
DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO STAY ACTION OR, IN THE ALTERNATIVE, MOTION TO DISMISS AND OPPOSITION TO PLAINTIFF'S FIRST "CHANGED" PETITION TO COMPEL ARBITRATION

# TABLE OF CONTENTS

I. LEGAL DISCUSSION IN SUPPORT OF REPLY TO OPPOSITION TO MOTION TO STAY OR DISMISS .................................................................. 1

    A. The First "Changed" (Amended) Complaint To Compel Arbitration Further Confirms That This Action Involves The Same Issues Pending Before The NLRB And PERB Requiring This Action To Be Stayed .................................................................. 1

    B. This Matter Does Not Involve Interpretation Of The Arbitration Clause And Therefore, It Should Be Stayed Pending Resolution Of The NLRB And PERB Proceedings .......................... 3

    C. Even If The Issue Before The Court Is Not Predominately Representational, A Stay Is Appropriate Because The Contract Issue Is Inextricably Bound Up With The Issues Before The NLRB .................................................................. 5

II. LEGAL DISCUSSION IN SUPPORT OF OPPOSITION TO TO "CHANGED" (AMENDED) MOTION TO COMPEL ARBITRATION .................................................................. 6

    A. SEIU 1021's "Changed" (Amended) Complaint To Compel Arbitration Should Be Denied Because WIB Did Not Agree To Arbitrate Disputes Which The Employee Did Not First Attempt To Resolve Through the Informal Resolution Process .................................................................. 6

    B. SEIU 1021's Reliance On The *Warrior & Gulf Navigation* And *Wiley* Cases Is Misplaced .................................................................. 9

    C. WIB's Refusal To Submit To Arbitration Was Not Frivolous Or In Bad Faith. Therefore, SEIU 1021's Request For Attorneys' Fees And Costs Should Be Denied .................................................................. 9

III. CONCLUSION .................................................................. 11

     # TABLE OF AUTHORITIES

**Cases**

*Cent. Valley Typographical Union, No. 46 v. McClatchy Newspapers*, 762 F.2d 741, 746 (9th Cir. 1985), *abrogated on other grounds by Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.* (2000) 529 U.S. 193 ................ 5, 6

*International Union of Petroleum & Industrial Workers v. Western Industrial Maintenance, Inc.* (9th Cir. 1983) 707 F.2d 425, 428 ................................ 9

*John Wiley & Sons, Inc. v. Livingston* (1964) 376 U.S. 543 ........................................... 9

*NLRB v Strong*, 393 U.S. 357, 361 (1969) ........................................................... 5

*Northern California Dist. Council of Hod Carriers, Bldg. and Const. Laborers, AFL-CIO v. Opinski*, 673 F.2d 1074, 1075 (9th Cir. 1982) ................................... 5

*United Assoc. of Journeymen & Apprentices, etc. v. Valley Engineers*, 975 F.2d 611, 613 (9th Cir. 1992) ........................................................... 3

*United Food & Commercial Workers Union v. Alpha Beta Co.* (9th Cir. 1984) 736 F.2d 1371, 1383 .................................................... 10

*United Steelworkers of America v. Warrior & Gulf Navigation Co.* (1960) 363 U.S. 574, 582 ........................................................ 6, 7, 9

*Woodworkers of America, Local 3-193 v. Ketchikan Pulp Co.*, 611 F.2d 1295, 1298 (9th Cir. 1980) ................................................... 3

***COMES NOW*** Respondent/Defendant Workforce Investment Board ("Defendant" or "WIB") and in reply to Petitioner/Plaintiff Service Employees International Union, Local 1021's ("Plaintiff" or "SEIU 1021") opposition to WIB's Motion to Stay Action or, in the alternative, dismiss SEIU 1021's Petition to Compel Arbitration, and in opposition to SEIU's First "Changed" (Amended) Complaint to Compel Arbitration, files the following:

**I.**     **LEGAL DISCUSSION IN SUPPORT OF REPLY TO OPPOSITION TO MOTION TO STAY OR DISMISS.**

    **A.**     **The First "Changed" (Amended) Complaint To Compel Arbitration Further Confirms That This Action Involves The Same Issues Pending Before The NLRB And PERB Requiring This Action To Be Stayed.**

     The fact that this action involves the same issues as those which are involved in the pending proceedings before the National Labor Relations Board ("NLRB") and Public Employment Relations Board ("PERB") is clearly established by the allegations that SEIU 1021 has made in all three matters. Specifically, in the First "Changed" (Amended) Complaint, SEIU 1021 alleges at paragraph 6 (emphasis added):

> Since on or about April 25, 2013, a dispute has existed over the interpretation and/or application of the Collective Bargaining Agreement in that there have been grievances and continues to be grievances concerning the interpretation of various portions of the Agreement. Section XIX Grievance Procedure (C) provide (sic) that the affected employees, the relevant supervisor and the Executive Director or his designee should meet to attempt to work out a solution to the issue prior to initiating the formal grievance process. The Collective Bargaining Agreement does not prohibit the Union from being present. **The Employer has refused to participate in the informal process if the Union is present or requests to be present.**

     In its initial Petition to Compel Arbitration, SEIU 1021 alleges at paragraph 5 (emphasis added):

> Since on or about April 25, 2013, a dispute has existed over the interpretation and/or application of the Collective Bargaining Agreement in that there have been grievances and continues to be grievances concerning the interpretation of various portions of the Agreement. Section XIX Grievance Procedure (C) provide (sic) that the affected employees, the relevant supervisor and the Executive Director or his designee should meet to attempt to work out a solution to the issue prior to initiating the formal grievance process. The Collective Bargaining Agreement does not prohibit the Union from being present. **The Employer has refused to**

> **participate in the informal process if the Union is present or requests to be present.**

In its pending NLRB Charge, SEIU 1021 alleges in box 2:

> Within the last six months, the above-named employer has violated the Act by discriminatorily and in retaliation for protected concerted activity refused to process a series of grievances because the Union and the grievants wanted the Union Representative to be present at the first informal step of the grievance procedure. **The employer has no objection to processing the grievances, so long as the Union Representative is not present at the informal step of the grievance procedure.** By the above and other acts, the above-named employer has interfered with, restrained and coerced employees in the exercise of their rights guaranteed in Section 7 of the Act.

(See Exhibit "B" to WIB's Request for Judicial Notice, filed August 21, 2013 in support of its motion to stay, emphasis added.)

Finally, in its pending PERB Charge, SEIU 1021 alleges in the first paragraph of Attachment 6(d):

> Within the last six months, the above-named employer has violated the Act by discriminatorily and in retaliation for protected concerted activity refused to process a series of grievances because the Union and the grievants wanted the Union Representative to be present at the first informal step of the grievance procedure. **The employer has no objection to processing the grievances, so long as the Union Representative is not present at the informal step of the grievance procedure.** By the above and other acts, the above-named employer has interfered with, restrained and coerced employees in the exercise of their rights guaranteed in Section 7 of the Act.

(See Exhibit "G" to WIB's Request for Judicial Notice, filed August 21, 2013 in support of its motion to stay, emphasis added.)

Based on a plain reading of SEIU 1021's allegations in each of the three pending actions, It is absolutely clear that this action is the third venue chosen by SEIU 1021 to adjudicate the same issue SEIU 1021 brought in two other venues. Although SEIU 1021 contends otherwise, all of their petitions, complaints, and charges specifically allege that the crux of the disputed issue before each forum is whether or not union employees are entitled to union representation during the informal grievance resolution procedure. SEIU 1021 filed its NLRB charge first. When that proceeding hit a road block due to procedural issues, SEIU 1021 went to PERB. There is no

disputed that these proceedings are still pending. As discussed at length in WIB's moving papers, because the heart of the issue in all three venues is one of representation, NLRB has primary jurisdiction. (*Woodworkers of America, Local 3-193 v. Ketchikan Pulp Co.*, 611 F.2d 1295, 1298 (9th Cir. 1980) (*Ketchikan Pulp*").) As such, district courts *must* defer to the NLRB. (*United Assoc. of Journeymen & Apprentices, etc. v. Valley Engineers*, 975 F.2d 611, 613 (9th Cir. 1992) ("*Valley Engineers*").) Therefore, the instant action should be stayed pending a decision by the NLRB.

### B. This Matter Does Not Involve Interpretation Of The Arbitration Clause And Therefore, It Should Be Stayed Pending Resolution Of The NLRB And PERB Proceedings.

SEIU 1021 contends that this matter should not be stayed because it characterizes the dispute as involving primarily a contractual issue, not representational. SEIU 1021's characterization of the dispute is incorrect. It is true that the relevant jurisdictional inquiry in cases involving Labor Code Section 301 cases is whether "the major issues to be decided ... can be characterized as primarily representational or primarily contractual." (*Valley Engineers*, *supra*, 975 F.2d at p. 614, internal citations omitted.) However, in present case, the "major issue" to be decided is whether WIB's employees are entitled to union representation during the informal grievance process.

Section XIX of the Collective Bargaining Agreement ("CBA") between SEIU 1021 and WIB sets forth the grievance procedure. (See pages 16-18 of Exhibit A attached to Defendant's Request for Judicial Notice, filed concurrently with WIB's Motion.) Subsection C describes the procedures for resolving grievances. (See page 17 of Exhibit A attached to Defendant's Request for Judicial Notice, filed concurrently with WIB's Motion.) The CBA provides for an informal resolution process which must be completed **before** the employee may proceed to the formal resolution process. The informal resolution process is set forth as follows:

> Grievances shall initially be taken up verbally by the employee and the immediate supervisor in an attempt to settle the matter on an informal basis. The Employer's Business and Employment Services Manager, or his/her designee, shall be advised of such meetings at least three (3) days prior and shall attend them. The parties consider it most desirable to settle grievances informally

         and promptly. **If this process does not resolve the matter the employee may proceed to the formal process described herein.**

(See page 17 of Exhibit A attached to Defendant's Request for Judicial Notice, emphasis added.)

         Compliance with the informal process is a condition precedent to the formal process. The formal resolution process then has three steps, beginning with "Step 1" and culminating in "Step 3" which provides for arbitration. The formal grievance resolution process, which includes the arbitration clause, is not triggered until the informal resolution process is completed, and then only if the matter is not resolved in formally.

         The informal resolution process provides for the participation of the employee, his/her immediate supervisor, and WIB's Business and Employment Services Manager or his/her designee. It does not provide for union representation. It further provides that if the matter does not resolve informally, "the employee may proceed to the formal process." Only when describing the three steps of the formal resolution process is union representation mentioned. (See page 17 of Exhibit A attached to Defendant's Request for Judicial Notice, filed concurrently with WIB's Motion.)

         In this case, SEIU 1021 erroneously insists that employees have union representation during the informal resolution process. SEIU 1021 contends that excluding it from the informal resolution process would bar any Union-initiated grievances. This is incorrect. The formal resolution process as set forth in the CBA specifically allows the Union to initiate any grievance after the involved employee has complied with the informal resolution process. Any other interpretation of the CBA renders the informal process meaningless. The informal resolution process was an arm's length, bargained for provision of the CBA. The informal resolution process, which SEIU 1021 agreed to as part of the bargaining process, does not provide for union representation. This is the whole point of having an informal process. If the union was involved in the informal process, the process would not be "informal."

         Further, of the eight (8) grievances identified in SEIU 1021's petition to compel arbitration, seven expressly (7) involve employees who would be able to participate in the informal process. The lone remaining grievance involves the question of union representation

- 4 -

during the informal resolution process - the same issue that is before this Court, the NLRB, and PERB. It is simply not true that prohibiting employees from having union representation during the informal resolution process would preclude the Union from initiating grievances. Every grievance involves an employee or employees.

It is SEIU 1021 which refused to allow employees to participate in the informal resolution process. Because the informal resolution process did not occur, a condition precedent required for initiating the formal resolution process, of which arbitration is a part, was not performed. Therefore, the question before the Court is not interpretation of the arbitration clause. The question is whether an employee is entitled to union representation during the initial resolution process. As such, the issue before the Court is clearly representational, which should be decided by the NLRB in the proceeding currently pending before it.

    C.    **Even If The Issue Before The Court Is Not Predominately Representational, A Stay Is Appropriate Because the Contract Issue Is Inextricably Bound Up With The Issues Before The NLRB.**

Even where the contractual interpretation issue is closely related to an unfair labor practice charge already presented to the NLRB, the district court has discretion to determine whether the proceedings should be stayed until the NLRB proceeding is finally resolved. (*Northern California Dist. Council of Hod Carriers, Bldg. and Const. Laborers, AFL-CIO v. Opinski*, 673 F.2d 1074, 1075 (9th Cir. 1982) ("*Opinski*".) When the issues raised in a district court suit and a simultaneous administrative proceeding are identical, a stay will often be necessary. (*Id.*) Further, the NLRB may, "if necessary to adjudicate an unfair labor practice, interpret and give effect to the terms of a collective bargaining contract." (*NLRB v Strong*, 393 U.S. 357, 361 (1969).)

In determining whether to stay a question of contract interpretation pending a related NLRB unfair labor practice proceeding, a court must consider several factors, including: (1) whether the contract interpretation issue is "inextricably bound up" with the issues in the unfair practice proceeding; (2) whether the decision of the NLRB will be issue preclusive in the district court; and (3) whether the equities favor a stay. (*Cent. Valley Typographical Union, No. 46 v.*

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO STAY ACTION OR, IN THE ALTERNATIVE, MOTION TO DISMISS AND OPPOSITION TO PLAINTIFF'S FIRST "CHANGED" PETITION TO COMPEL ARBITRATION

*McClatchy Newspapers*, 762 F.2d 741, 746 (9th Cir. 1985), *abrogated on other grounds by Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.*, 529 U.S. 193 (2000).)

In this case, despite SEIU 1021's contention to the contrary, the question of whether arbitration should be compelled is inextricably tied to the NLRB proceedings. In NLRB Case No. 20-CA-103982, SEIU 1021 has specifically claimed that WIB "refused to process a series of grievances" because of a dispute regarding union representation during the informal grievance resolution process (See Exhibit B to Defendant's Request for Judicial Notice.) Thus, SEIU 1021 has asked the NLRB to decide whether an employee is entitled to union representation during the informal resolution process. Despite its contention to the contrary, SEIU 1021 has obviously asked the Court in its Petition to Compel Arbitration to decide the same question.

If this matter is not stayed and the Court orders this matter to arbitration, the Court is, in effect, rendering the informal resolution process set forth in the CBA meaningless. Again, the informal resolution process was an arm's length, bargained for provision of the CBA. The informal resolution process to which SEIU 1021 agreed does not provide for union representation. This is the whole point of having an informal process. If the union was involved in the informal process, the process would not be "informal." Thus, the issues before this Court and the NLRB are, identical and the issues before the Court are inextricably bound up with those pending before the NLRB. As such, this matter should be stayed until the administrative proceedings currently pending are resolved. The Court should not allow forum shopping when the same issue is pending before both the NLRB and PERB.

II. **LEGAL DISCUSSION IN SUPPORT OF OPPOSITION TO "CHANGED" (AMENDED) MOTION TO COMPEL ARBITRATION.**

A. **SEIU 1021's "Changed" (Amended) Motion To Compel Arbitration Should Be Denied Because WIB Did Not Agree To Arbitrate Disputes Which The Employee Did Not First Attempt To Resolve Through The Informal Resolution Process.**

The existence of an agreement to arbitrate is a condition precedent to compel arbitration. An employer cannot be compelled to arbitrate a dispute if he has not agreed to arbitration. (*United Steelworkers of America v. Warrior & Gulf Navigation Co.* (1960) 363 U.S. 574, 582

("*Warrior & Gulf Navigation*").) In this case, WIB has not agreed to arbitrate disputes which the employee did not first attempt to resolve through the informal resolution process.

As discussed above, Section XIX of the Collective Bargaining Agreement ("CBA") between SEIU 1021 and WIB sets forth the grievance procedure. (See pages 16-18 of Exhibit A attached to Defendant's Request for Judicial Notice, filed concurrently with WIB's Motion.) Subsection C describes the procedures for resolving grievances. (See page 17 of Exhibit A attached to Defendant's Request for Judicial Notice, filed concurrently with WIB's Motion.) The CBA provides for an informal resolution process which must be completed before the employee may proceed to the formal resolution process. Only the formal resolution process has three steps, beginning with "Step 1" and culminating in "Step 3," which provides for arbitration. The formal grievance resolution process, which includes the arbitration clause, is not triggered until the informal resolution process is completed, and only then if the dispute is not resolved informally.

The informal resolution process provides for participation of the employee, his/her immediate supervisor, and WIB's Business and Employment Services Manager or his/her designee. It does not provide for union representation. It further provides that if the matter does not resolve informally, "the employee may proceed to the formal process." When describing the three steps of the formal resolution process, only then is union representation is specifically provided for. (See page 17 of Exhibit A attached to Defendant's Request for Judicial Notice, filed concurrently with WIB's Motion.)

The CBA in effect at the time SEIU 1021 began to insist upon union representation during the informal resolution process was signed by six (6) SEIU 1021 representatives, including Field Representative Stephen Cutty, on January 18, 2013. (Declaration of Robert Bloom ("Bloom Decl.") ¶ 4; Exhibit A to Defendant's Request for Judicial Notice.) The informal and formal grievance resolution process included in the CBA was agreed upon by both WIB and SEIU 1021 through an arm's length bargaining process. (Bloom Decl. ¶ 5.) The informal and formal grievance resolution process included in the January 18, 2013 CBA has

1  been in place for the nearly thirteen (13) years there has been a CBA. (Bloom Decl. ¶ 6.) This provision has been unchanged since the first CBA and throughout the nearly thirteen (13) year history of the CBA, neither WIB nor SEIU 1021 interpreted the CBA as requiring union representation during the informal resolution process. (Bloom Decl. ¶ 7.)

During the nearly thirteen (13) year history of the CBA, approximately six (6) situations have arisen in which union represented employees have availed themselves of the informal resolution process. (Bloom Decl. ¶ 8.) In none of those approximately six (6) situations has the employee or SEIU 1021 insisted or even requested that the employee have union representation during the informal resolution process. (Bloom Decl. ¶ 9.) Each of those approximately six (6) situations was resolved at the informal resolution process without union involvement. (Bloom Decl. ¶ 10.) Because the situations were informally resolved, the formal resolution process was not initiated. (Bloom Decl. ¶ 11.)

Recently, on June 6, 2013, SEIU 1021 informed WIB that they wanted to extend the current CBA. Neither WIB nor SEIU 1021 indicated they wanted to change any part of the CBA, including the informal resolution process. Therefore, an extension of the CBA as is was agreed to through September 30, 2014. (Bloom Decl. ¶ 12.)

In this case, SEIU 1021 erroneously insists that employees have union representation during the informal resolution process. If the Court orders this matter to arbitration, it will render the informal resolution process meaningless. The informal resolution process was an arm's length, bargained for provision of the CBA. The informal resolution process, which SEIU 1021 agreed to as part of the bargaining process, does not provide for union representation. This is the whole point of having an informal process. If the union was involved in the informal process, the process would no longer be "informal." If the Court orders this matter to arbitration, it will allow SEIU 1021 to unilaterally change the way disputes have been handled for the eleven years the CBA has been in existence without renegotiating the terms of the CBA.

/ / /

/ / /

- 8 -
DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO STAY ACTION OR, IN THE ALTERNATIVE, MOTION TO DISMISS AND OPPOSITION TO PLAINTIFF'S FIRST "CHANGED" PETITION TO COMPEL ARBITRATION

SEIU 1021 refused to allow employees to participate in the informal resolution process. Because the informal resolution process was not completed, a condition precedent to arbitration was not performed. Therefore, SEIU 1021's Petition to Compel Arbitration should be denied.

**B.    SEIU 1021's Reliance On The *Warrior & Gulf Navigation* And *Wiley* Cases Is Misplaced.**

SEIU 1021 relies on the cases of *United Steelworkers of America v. Warrior & Gulf Navigation Co.* (1960) 363 U.S. 574 ("*Warrior & Gulf Navigation*") and *John Wiley & Sons, Inc. v. Livingston* (1964) 376 U.S. 543 ("*Wiley*") to support its argument that arbitration should be compelled. SEIU 1021's reliance on these cases is misguided.

The CBA in *Wiley* provided for three-step grievance processes, with the third step being arbitration. (*Wiley, supra,* 376 U.S. at p. 555.) The employer in Wiley contended that the first two steps in the process had not been followed and therefore, it had no duty to arbitrate the dispute. (Id. at p. 556.) However, the CBA in *Wiley* did not provide for an informal resolution as a condition precedent to the formal grievance resolution culminating in arbitration. Similarly, the CBA in *Warrior & Gulf Navigation* did not contain a condition precedent to arbitration. In fact, none of the cases cited by SEIU 1021 in its brief included an informal resolution process as a condition precedent to initiation of the formal resolution process and arbitration. Thus, both *Warrior & Gulf Navigation* and *Wiley* are clearly distinguishable from the instant matter.

None of the cases cited by SEIU 1021 require an informal resolution process as a condition precedent to a formal resolution process and arbitration. Because the CBA at issue requires an attempt at informal resolution as a condition precedent to the formal resolution process and arbitration, SEIU 1021's Petition to Compel Arbitration should be denied.

**C.    WIB's Refusal To Submit To Arbitration Was Not Frivolous Or In Bad Faith. Therefore, SEIU 1021's Request For Attorneys' Fees And Costs Should Be Denied.**

"Under the American Rule, absent contractual or statutory authorization, a prevailing litigant ordinarily may not collect attorneys' fees." (*International Union of Petroleum & Industrial Workers v. Western Industrial Maintenance, Inc.* (9th Cir. 1983) 707 F.2d 425, 428.) Attorneys' fees may only be awarded to the prevailing party when the opposing party

1  "frivolously or in bad faith refuses to submit a dispute to arbitration." (*United Food &
2  Commercial Workers Union v. Alpha Beta Co.* (9th Cir. 1984) 736 F.2d 1371, 1383.)

3        WIB's refusal to submit to Arbitration was correct and was certainly not frivolous nor in
4  bad faith. As set forth in the declaration of Robert Bloom, the Executive Director of WIB, the
5  parties have been operating under a CBA for nearly thirteen (13) years. (Bloom Decl. ¶¶ 6, 7.)
6  Throughout that time, the CBA has contained a provision for an informal resolution process
7  which must be completed before the formal, three-step resolution process, including arbitration,
8  may be initiated. (Bloom Decl. ¶ 7; Exhibit A to Defendant's Request for Judicial Notice.) The
9  informal and formal grievance resolution process included in the CBA was agreed upon by both
10 WIB and SEIU 1021 through an arm's length bargaining process. (Bloom Decl. ¶ 5.)
11 Throughout the nearly thirteen (13) year history of the CBA, neither WIB nor SEIU 1021
12 interpreted the CBA as requiring union representation during the informal resolution process.
13 (Bloom Decl. ¶ 7.)

14       Further, during the nearly thirteen (13) year history of the CBA, approximately six (6)
15 situations have arisen in which union represented employees have availed themselves of the
16 informal resolution process. (Bloom Decl. ¶ 8.) In none of those approximately six (6)
17 situations has the employee or SEIU 1021 insisted or even requested that the employee have
18 union representation during the informal resolution process. (Bloom Decl. ¶ 9.) Each of those
19 approximately six (6) situations was resolved at the informal resolution process without union
20 involvement. (Bloom Decl. ¶ 10.) Because the situations were informally resolved, the formal
21 resolution process was not initiated. (Bloom Decl. ¶ 11.) It is SEIU 1021 which inexplicably
22 wants to now change the nearly thirteen (13) years of practice of representation at the informal
23 process.

24       Recently, on June 6, 2013, SEIU 1021 informed me that they wanted to extend the CBA.
25 Neither WIB nor SEIU 1021 indicated they wanted to change any part of the CBA, including the
26 informal resolution process. Therefore, an extension of the CBA as is was agreed to through
27 September 30, 2014. (Bloom Decl. ¶ 12.)

28

WIB's refusal to agree to the initiation of the formal resolution process and arbitration without the employee first completing the informal resolution process was based on the eleven-year history of the subject CBA. In the instances where the informal resolution process was invoked prior to the instant dispute, neither the employee nor SEIU 1021 insisted upon or requested union representation. Therefore, it can hardly be said that WIB acted frivolously or in bad faith. WIB was simply relying on the precedent established through its previous interactions with SEIU 1021 with regard to conflict resolution.

Furthermore, WIB's belief that the same issues are before this Court and pending before the NLRB and PERB is also correct and reasonable. As set forth above, the four (4) petitions, motions, and charges filed by SEIU 1021 in three (3) different forums all are based on the Union's claim that WIB will not allow employees to have union representation during the informal resolution process.

Because WIB was not acting frivolously or in bad faith in refusing to submit this dispute to arbitration, SEIU 1021's request for attorneys' fees and costs should be denied.

## III. CONCLUSION.

Based upon the moving papers and the foregoing, Defendant/Respondent WIB respectfully requests that its motion for stay or dismissal be granted pending the resolution of the matters pending before the NLRB and PERB. –

///
///
///
///
///
///
///
///
///

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO STAY ACTION OR, IN THE ALTERNATIVE, MOTION TO DISMISS AND OPPOSITION TO PLAINTIFF'S FIRST "CHANGED" PETITION TO COMPEL ARBITRATION

1  Defendant/Respondent WIB also respectfully requests that SEIU 1021's petition to compel arbitration be denied. Finally, Defendant/Respondent WIB respectfully requests that SEIU 1021's request for attorneys' fees and costs be denied.

Dated: September 18, 2013              LAW OFFICES OF RANDAL M. BARNUM


                                       By:     /s/ Randal M. Barnum
                                              Randal M. Barnum
                                              Carrie E. Croxall
                                              Attorneys for Defendant,
                                              PRIVATE INDUSTRY COUNCIL OF
                                              SOLANO COUNTY, INC., dba
                                              WORKFORCE INVESTMENT BOARD
                                              OF SOLANO COUNTY (erroneously sued
                                              herein as WORKFORCE INVESTMENT
                                              BOARD)

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO STAY ACTION OR, IN THE ALTERNATIVE, MOTION TO DISMISS AND OPPOSITION TO PLAINTIFF'S FIRST "CHANGED" PETITION TO COMPEL ARBITRATION