UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 1021, | CIV. NO. 2:13-01670 WBS EFB |
| Plaintiff, | MEMORANDUM AND ORDER RE: MOTION TO STAY; MOTION TO COMPEL ARBITRATION |
| v. | |
| PRIVATE INDUSTRY COUNCIL OF SOLANO COUNTY, INC., dba WORKFORCE INVESTMENT BOARD OF SOLANO COUNTY, | |
| Defendant. | |

----oo0oo----

Plaintiff Service Employees International Union, Local 1021 (sometimes "the Union") brought this action under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, to compel defendant Private Industry Council of Solano County (sometimes "WIB") to arbitrate eight grievances pursuant to the parties' Collective Bargaining Agreement ("CBA").  (First Changed Compl. to Compel Arbitration ("FAC") (Docket No. 12).)

1

1    Defendant now moves to stay this action pending the

2  outcome of proceedings before the National Labor Relations Board

3  ("NLRB") and the California Public Employment Relations Board

4  ("PERB"), or, alternatively, to dismiss the action.  (Def.'s Mot.

5  to Stay Action or to Dismiss ("Mot. to Stay") (Docket No. 7).)

6  I.   Factual & Procedural History

7    On January 18, 2013, the parties entered into the CBA.

8  (See FAC Ex. A.)  Section II of the CBA designates the Union as

9  the exclusive bargaining representative for all WIB employees.

10  (Id. § II.)  Section XIX of the CBA outlines the procedure for

11  resolving grievances under the CBA.  (Id. § XIX.)  It applies to

12  any "claim or complaint by a regular or probationary employee . .

13  . the Union, or the Employer, concerning the interpretation or

14  application of this Agreement regarding any action of the

15  employer pertaining to wages, hours, or working conditions."

16  (Id. § XIX(A).)

17    Section XIX(C) provides that the parties to a grievance

18  should first attempt to resolve that grievance informally:

19       Grievances shall initially be taken up by the
         employee and the immediate supervisor in an
20       attempt to settle the matter on an informal
         basis.   The  Employer's   Business   and
21       Employment Services Manager, or his or her
         designee, shall be advised of such meetings
22       at least three (3) days prior and shall
         attend them.  The parties consider it most
23       desirable to settle grievances informally and
         promptly.  If this process does not resolve
24       the matter the employee may proceed to the
         formal process described herein.
25
26  (Id. § XIX(C).)  The formal resolution process consists of three

27  steps.  (Id.)  Although Section XIX(C) requires that a party to a

28  grievance proceed through the outlined steps in sequence, Section

1   XIX(D) provides that the employer's "[f]ailure . . . to respond

2   to a grievance within the specified time limits automatically

3   grants the grievant the right to process the grievance to the

4   next step."  (Id. § XIX(D)(2).)

5        At Step One, the grievant may submit a written

6   grievance to the Executive Director of WIB within seven days

7   after the completion of the informal process.  (Id. § XIX(C).)

8   The Executive Director or his or her designee must schedule a

9   meeting to hear the grievance within ten days and issue a written

10  response to the grievant and the union within ten days of that

11  meeting.  (Id.)

12       If the grievance is not resolved at Step One, Step Two

13  permits the Union or employer to submit a written request for an

14  Adjustment Board within ten days after Step One is completed.

15  (Id.)  The Adjustment Board must convene within twenty-five days

16  of this request, conduct an informal hearing, and issue a written

17  advisory opinion reflecting a majority vote of the Adjustment

18  Board.  (Id.)  Either party may appeal the Adjustment Board's

19  decision within fifteen days after its opinion is issued.  (Id.)

20       If the grievance is not resolved at Steps One or Two,

21  Step Three allows either party to submit a written request for

22  arbitration to the Union or the Executive Director within fifteen

23  days of the conclusion of Step Two.  (Id.)  If a party submits a

24  request for arbitration, the Union and WIB are required to select

25  a mutually acceptable and impartial arbitrator or, if they cannot

26  do so, to scratch down a list of five names submitted by the

27  American Arbitration Association until only one arbitrator

28  remains.  (Id.)  The CBA provides that "the decision of the

1   arbitrator shall be final and binding upon the parties."  (Id.)

2          This action arises out of eight grievances brought

3   under the CBA.  These grievances allege that defendant violated

4   CBA provisions relating to hours, (FAC Ex. B, ¶ 2), medical

5   benefits, (id. ¶ 3), personnel files (id. ¶¶ 5-6), job postings

6   (id. ¶¶ 1, 4), employee discipline (id. ¶ 8), and the informal

7   grievance procedure itself.  (Id. ¶ 7.)  Plaintiff alleges that

8   prior to April 25, 2013, it attempted to resolve these grievances

9   through the informal process, but that defendant "refused to

10  participate in the informal process if the Union is present or

11  requests to be present."  (FAC ¶ 6.)  On April 25, 2013,

12  plaintiff sent a letter to defendant in which it sought to

13  initiate the formal resolution process.  (Id. ¶ 7.)  This letter

14  noted that "the Union has attempted to resolve these grievances

15  by the Informal Resolution process on numerous occasions with

16  your agency[,] but you have maintained communications are to be

17  sent only to the Executive Director or an employee must initiate

18  the grievance in order for it to be valid."  (Id. Ex. B, at 47.)

19         On May 3, 2013, defendant responded that the CBA did

20  not permit the Executive Director to become involved at this

21  stage because, to its knowledge, "no part of this Informal

22  Resolution Process has been initiated . . . and no case can be

23  made that 'the grievance is not resolved' via this prescribed

24  initial process."  (Id. Ex. C, at 52.)  Defendant further stated

25  that "there is similarly no allowable role for an agency SEIU

26  Steward or you as an SEIU Field Representative to sit in upon or

27  participate in the CBA-prescribed three-party meeting to attempt

28  informal resolution."  (Id.)

4

1          On May 7, 2013, plaintiff sent defendant a letter

2    stating that it believed that defendant's letter constituted a

3    response to its submission of a formal grievance and requesting

4    the appointment of an Adjustment Board.  (Id. Ex. D, at 54.)

5    After defendant reiterated that the Executive Director would not

6    involve himself in the grievance process, (see id. Ex. E, at 56),

7    plaintiff sent defendant a letter on May 23, 2013 in which it

8    requested arbitration of its grievances.  (Id. Ex. F, at 58.)

9          On April 26, a day after plaintiff submitted its formal

10   grievances to defendant, plaintiff filed a charge with the NLRB.

11   (Def.'s Req. for Judicial Notice ("RJN") Ex. B (Docket No. 8-2).)

12   Plaintiff asserted that defendant retaliated against it in

13   violation of National Labor Relations Act, 29 U.S.C. § 151 et

14   seq., by "refus[ing] to process a series of grievances because

15   the Union and the grievants wanted the Union Representative to be

16   present at the first informal step of the grievance procedure."

17   (Id.)  Plaintiff filed a similar unfair labor practice charge,

18   pursuant to the Meyers-Milias-Brown Act ("MMBA"), Cal. Gov. Code

19   § 3500 et seq., with PERB on May 13, 2013.  (Id. Ex. G (Docket

20   No. 8-7).)  On May 30, 2013, the NLRB dismissed plaintiff's

21   charge and stated that it lacked jurisdiction over defendant

22   because it was a state entity.  (Id. Ex. C (Docket No. 8-3).)

23   Plaintiff filed a timely appeal of NLRB's decision on June 12,

24   2013.  (Id. Ex. D (Docket No. 8-4).)  Both proceedings are

25   currently pending.

26          On August 6, 2013, plaintiff filed a motion to compel

27   arbitration in Solano County Superior Court.  (Compl. (Docket No.

28   1-1).)  Defendant removed the action to this court under its

5

1   federal question jurisdiction pursuant to 28 U.S.C. § 1441(a).

2   (Not. of Removal (Docket No. 1).)  Defendant now moves to stay

3   plaintiff's motion to compel arbitration pending resolution of

4   the proceedings before the NLRB and PERB or, alternatively, to

5   dismiss the motion.[1]  (Mot. to Stay 1.)

6   II.  Request for Judicial Notice

7           A court may take judicial notice of facts "not subject

8   to reasonable dispute" because they are either "(1) generally

9   known within the territorial jurisdiction of the trial court or

10  (2) capable of accurate and ready determination by resort to

11  sources whose accuracy cannot reasonably be questioned."  Fed. R.

12  Evid. 201.  Judicial notice may properly be taken of matters of

13  public record outside the pleadings.  See MGIC Indem. Corp v.

14  Weisman, 803 F.2d 500, 504 (9th Cir. 1986).  In addition, "a

15  court may consider evidence on which the complaint necessarily

16  relies if: (1) the complaint refers to the document; (2) the

17  _____

18      [1] Defendant raises several arguments in favor of dismissal.
    First, defendant argues that plaintiff's motion to compel
    arbitration pursuant to California Code of Civil Procedure § 1281

19  is preempted by federal law. (Mot. to Stay 9-10.)  Second,
    defendant argues that plaintiff failed to properly notice and

20  serve the motion in the manner required by applicable California
    and federal law.  (Id. at 12.)

21      Plaintiff's FAC has cured both of these deficiencies, as the
    motion to compel arbitration is now based on federal law, (see

22  FAC 3:12-17), is properly noticed (see FAC 1:12-21), and was

23  properly served upon defendant prior to removal.  (See Pl.'s Mem.
    of P.& A. in Supp. of Pl.'s Pet. to Compel Arbitration 11:7-14

24  (Docket No. 11).)

25      Defendant also argues that dismissal is warranted because
    plaintiff failed to exhaust the grievance procedure under the CBA

26  and because the CBA does not provide for union involvement during
    the informal dispute resolution process.  (Mot. to Stay 10-12.)

27  These arguments are duplicative of its arguments in opposition to
    the motion to compel arbitration itself, and the court will

28  address them in that context.

6

1  document is central to the plaintiff's claim; and (3) no party

2  questions the authenticity of the copy attached to the . . .

3  motion." Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998

4  (9th Cir. 2010).

5          Both parties request the court to take notice of the

6  CBA. (See Pl's Not. of Non-Opp'n to Def.'s Req. for Judicial

7  Notice (Docket No. 10).)  A court may take notice of a collective

8  bargaining agreement.  See, e.g., Busey v. P.W. Supermarkets,

9  Inc., 368 F. Supp. 2d 1045, 1049-50 (N.D. Cal. 2005).  Moreover,

10  the CBA is attached to the First Changed Complaint, is central to

11  its motion to compel arbitration, and neither party questions its

12  authenticity.  See Daniels-Hall, 629 F.3d at 998.  The court will

13  therefore take notice of the CBA.

14          Defendant also requests that the court take notice of

15  documents filed in administrative proceedings before the NLRB and

16  PERB. (See RJN Exs. B-G.)  Because these documents are public

17  records of administrative agencies, the court will judicially

18  notice them. See Anderson v. Holder, 673 F.3d 1089, 1094 n.1 (9th

19  Cir. 2012).  However, the court will not take judicial notice of

20  any disputed facts contained in these administrative complaints.

21  See Lee v. City of Los Angeles, 250 F.3d 668, 690 (9th Cir. 2001).

22          Finally, plaintiff's motion to compel arbitration is

23  accompanied by several letters between Steve Cutty, the Field

24  Representative for the Union, and Robert Bloom, the Executive

25  Director of WIB. (See FAC Exs. B-F.)  Although the parties

26  dispute the legal significance of these letters, they are

27  attached to the complaint, are central to plaintiff's case, and

28  neither party disputes their authenticity.  See Daniels-Hall, 629

7

1  F.3d at 998.  Accordingly, "[t]he court does not take judicial

2  notice of the facts contained in these documents but will take

3  judicial notice that correspondence occurred."  Robinson v.

4  Salazar, 838 F. Supp. 2d 1006, 1030 n.11 (E.D. Cal. 2012)

5  (McAuliffe, J.).

6  III. Motion to Stay

7          Section 301 of the LMRA provides that "[s]uits for

8  violation of contracts between an employer and a labor

9  organization . . . may be brought in any district court in the

10  United States having jurisdiction of the parties, without respect

11  to the amount in controversy or . . . the citizenship of the

12  parties."  29 U.S.C. § 185(a).  "Although district courts have

13  concurrent jurisdiction with the NLRB over such cases, federal

14  courts . . . must defer to the NLRB when, on close examination,

15  section 301 cases fall within the NLRB's primary jurisdiction."

16  Serv. Emps. Int'l Union v. St. Vincent Med. Ctr., 344 F.3d 977,

17  983 (9th Cir. 2003) (quoting United Ass'n of Journeymen &

18  Apprentices of the Plumbing & Pipefitting Indus., Local 342 v.

19  Valley Eng'rs, 975 F.2d 611, 613-14 (9th Cir. 1992) (internal

20  quotation marks omitted)).

21          "To determine whether a case is within the NLRB's

22  primary jurisdiction, we have drawn the jurisdictional line by

23  asking whether the major issues to be decided . . . can be

24  characterized as primarily representational or primarily

25  contractual."  Id. (quoting Pace v. Honolulu Disposal Serv.,

26  Inc., 227 F.3d 1150, 1152 (9th Cir. 2000) (internal quotation

27  marks omitted)).  For instance, the court does not have "initial

28  authority to consider and pass upon questions of representation

1  and determination of appropriate bargaining units." <u>Local 3-193</u>

2  <u>Int'l Woodworkers of Am. v. Ketchikan Pulp Co.</u>, 611 F.2d 1295,

3  1301 (9th Cir. 1980).  By contrast, a suit that "turns on a

4  question of contract interpretation . . . is properly in federal

5  court rather than before the NLRB." <u>Pace</u>, 277 F.3d at 1157.

6       "[T]he major issue to be decided in this case – the

7  arbitrability of the alleged violations of the Agreement – is

8  primarily contractual." <u>St. Vincent</u>, 344 F.3d at 983; <u>see also</u>

9  <u>Bhd. of Teamsters & Auto Truck Drivers Local No. 70 v. Celotex</u>

10 <u>Corp.</u>, 708 F.2d 488, 490 n.3 (9th Cir. 1983) ("[P]rimary

11 jurisdiction lies with the district court for breach of

12 collective bargaining agreement claims." (citations omitted)).

13 Plaintiff's NLRB and PERB charges allege only that defendant

14 violated the NLRA and MMBA by refusing to allow union

15 representatives to attend informal meetings as part of the

16 grievance resolution process.  (See RJN Exs. B and G.)  By

17 contrast, plaintiff's grievances allege that defendant violated

18 various terms in the CBA relating to hours, medical benefits, job

19 postings, access to personnel files, and the informal grievance

20 procedure itself.  (See FAC Ex. B.)  The application of the CBA

21 to these grievances "does not depend even partially on the

22 question of whom the union represents." <u>St. Vincent</u>, 344 F.3d at

23 983 (quoting <u>Valley Eng'rs</u>, 975 F.2d at 614 (internal quotation

24 marks omitted)).

25      Defendant argues that this dispute is representational

26 because it involves "whether employees are entitled to have Union

27 representation during its initial informal grievance resolution

28 process." (See Mot. to Stay 7:1-2.)  Not so.  A dispute is not

1  representational simply because it implicates union

2  representation.  Rather, a representational dispute involves

3  "determining the appropriate group of employees for the

4  bargaining unit."  <u>Cappa v. Wiseman</u>, 659 F.2d 957, 959 (9th Cir.

5  1981).  It is undisputed that plaintiff is the authorized

6  bargaining representative for the employees whose grievances are

7  at issue here.  (<u>See</u> FAC Ex. A § II.)  Even if this case had

8  "representational overtones," which it does not, that would not

9  be sufficient to stay a "classic contractual dispute" such as

10  this action.  <u>Pace</u>, 227 F.3d at 1157.

11        Nor does the pendency of parallel administrative

12  proceedings justify a stay.  The Ninth Circuit has held that when

13  a question of contract interpretation is "inextricably bound up"

14  with a representational issue before the NLRB, the court must

15  consider whether the NLRB's decision will preclude the contract

16  claim and whether the equities favor a stay.  <u>Cent. Valley</u>

17  <u>Typographical Union No. 46 v. McClatchy Newspapers</u>, 762 F.2d 741,

18  747-48 (9th Cir. 1985), <u>abrogated on other grounds by</u> <u>Cortez Byrd</u>

19  <u>Chips, Inc. v. Bill Harbert Constr. Co.</u>, 529 U.S. 193 (2000).

20  But these considerations are relevant "only when the dispute

21  involves representational issues."  <u>Id.</u> (citation omitted).  Even

22  when a "§ 301 suit and [an] unfair labor practice charge involve

23  a virtually identical issue," a district court need not stay an

24  action that "addresse[s] no issues within the NLRB's primary

25  jurisdiction."  <u>Int'l Bhd. of Elec. Workers, Local 352 v. Brink</u>

26  <u>Constr. Co.</u>, 825 F.2d 207, 213 (9th Cir. 1987).[2]

27  _____

28        [2] An analogous rule applies in the context of PERB
    proceedings.  <u>See, e.g.</u>, <u>Keiser v. Lake County Superior Court</u>,

1        As explained above, plaintiff's NLRB and PERB charges

2   allege only that defendant violated federal and state labor law

3   by refusing to allow union representatives to be present during

4   the informal grievance resolution process.  This allegation is

5   distinct from those raised in the grievances themselves, which

6   are based on the terms of the CBA and therefore fall under the

7   primary jurisdiction of the court.[3]  Celotex Corp., 708 F.2d at

8   490 n.3; cf. Int'l Union of Painter and Allied Trades, Dist. 15,

9   Local 159 v. J&R Flooring, Inc., 656 F.3d 860, 869 (9th Cir.

10  2011) (noting that the NLRB "declined to reach the contractual

11  dispute" in that case because it "was not the proper forum"

12  (citation and internal quotation marks omitted)).  As a result,

13  the mere "potential of conflict between the court's decision and

14  the NLRB's ultimate decision . . . does not compel the stay."

15  Brink, 825 F.2d at 213.  Accordingly, the court will deny

16  defendant's motion to stay this action.

17  IV.  Motion to Compel Arbitration

18       A.   Legal Standard

19       The FAA states that a written provision in "a contract

20  evidencing a transaction involving commerce to settle by

21

22  No. C05-02310 MJJ, 2005 WL 3370006, at *6 (N.D. Cal. Dec. 12,
    2005) (holding that plaintiff's federal claims were not barred by
23  the pendency of her PERB charge even though they were "based on
    the same conduct underlying her PERB charge.")
24

25       [3] In fact, the NLRB dismissed plaintiff's charge on the
    basis that it "does not have jurisdiction" over plaintiff's
26  administrative charge at all.  (See RJN Ex. C, at 1.)  Although
    plaintiff has appealed this determination, it would nonetheless
27  be ironic to conclude that this dispute falls under the primary
    jurisdiction of an agency that has so far disclaimed
28  jurisdiction.

                                   11

1  arbitration a controversy thereafter arising out of such contract
2  . . . shall be valid, irrevocable, and enforceable, save upon
3  such grounds as exist at law or in equity for the revocation of
4  any contract."  9 U.S.C. § 2.  "[T]he FAA limits courts'
5  involvement to 'determining (1) whether a valid agreement to
6  arbitrate exists and, if it does, (2) whether the agreement
7  encompasses the dispute at issue.'"  Cox v. Ocean View Hotel
8  Corp., 533 F.3d 1114, 1119 (9th Cir. 2008) (quoting Chiron Corp
9  v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir.
10  2000)).  "[A]ny doubts concerning the scope of arbitrable issues
11  should be resolved in favor of arbitration, whether the problem
12  at hand is a construction of the contract language itself or an
13  allegation of waiver, delay, or like defense to arbitrability."
14  Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1,
15  24-25 (1983).

16       The FAA "leaves no place for the exercise of discretion
17  by a district court, but instead mandates that district courts
18  shall direct the parties to proceed to arbitration on issues as
19  to which an arbitration agreement has been signed."  Dean Witter
20  Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) (emphasis in
21  original).  Upon a showing that a party has failed to comply with
22  a valid arbitration agreement, the district court must issue an
23  order compelling arbitration.  See Cohen v. Wedbush, Noble Cooke,
24  Inc., 841 F.2d 282, 285 (9th Cir. 1988), overruled on other
25  grounds by Ticknor v. Choice Hotels Intern., Inc., 265 F.3d 931
26  (9th Cir. 2001).

27       B.   Discussion
28            "[L]ongstanding Supreme Court precedent encourag[es]

12

1    the use of contractual arbitration provisions to resolve labor

2    disputes." J & R Flooring, 656 F.3d at 869 (citations omitted).

3    "The function of the court . . . is confined to ascertaining

4    whether the party seeking arbitration is making a claim which on

5    its face is governed by the contract.  Whether the moving party

6    is right or wrong is a question of contract interpretation for

7    the arbitrator." United Steelworkers Co. v. Am. Mfg. Co., 363

8    U.S. 564, 567-68 (1960).  The presence of an arbitration clause

9    in a collective bargaining agreement raises a presumption in

10   favor of arbitration, such that "[a]n order to arbitrate . . .

11   should not be denied unless it may be said with positive

12   assurance that the arbitration clause is not susceptible of an

13   interpretation that covers the asserted dispute." Inlandboatmens

14   Union of Pac. v. Dutra Grp., 279 F.3d 1075, 1079 (9th Cir. 2002)

15   (quoting AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S.

16   643, 650 (1986) (internal quotation marks omitted)).

17          The CBA's grievance procedure applies to any "claim or

18   complaint . . . concerning the interpretation or application of

19   this Agreement regarding any action of the employer pertaining to

20   wages, hours, or working conditions."  (See FAC Ex. A § XIX(A).)

21   As explained above, plaintiff's grievances allege that defendant

22   violated numerous terms in the CBA relating to hours, medical

23   benefits, job postings, access to personnel files, and use of the

24   informal grievance procedure.  (See id. Ex. B.)  Plaintiff also

25   alleges that it satisfied each of the steps outlined in the CBA's

26   grievance procedure and ultimately requested arbitration.  (See

27   FAC ¶¶ 5-11; see also FAC Exs. B-F.)  As a result, plaintiff has

28   shown that the arbitration provision of the CBA "encompasses the

1  dispute at issue" and that it is entitled to arbitrate its

2  grievances.  See Cox, 533 F.3d at 1119.

3           Defendant does not dispute that plaintiff's grievances

4  arise under the terms of the CBA.  Rather, defendant contends

5  that it is not required to arbitrate these grievances because

6  plaintiff has not initiated an informal resolution of these

7  grievances.  (See Mot. to Stay 10-11.)  Defendant argues that

8  plaintiff's efforts to initiate informal proceedings with union

9  representatives fail to comply with the CBA because the CBA

10  permits only the employee, defendant, and defendant's Business

11  and Employment Services Manager to attend an informal meeting.

12  (See id.; see also Def.'s Reply at 8-9 (Docket No. 15).)  As a

13  result, defendant concludes, plaintiff has not satisfied a

14  condition precedent to arbitration and its motion to compel

15  arbitration should be denied.  (See Def.'s Reply at 9.)

16           The court need not resolve this argument because it is

17  a "procedural question" that should be decided by an arbitrator,

18  not by the court.  Howsam v. Dean Witter Reynolds, Inc., 537 U.S.

19  79, 85 (2002); see also, e.g., Hosp. & Inst. Workers Union Local

20  250 v. Marshal Hale Mem'l Hosp., 647 F.2d 38, 41 (9th Cir. 1981)

21  (holding that disputes regarding "alleged non-compliance with a

22  similar multiple-step [grievance] procedure . . . should be

23  resolved by the arbitrator" (citation omitted); Cannery Workers,

24  Processors, Warehousemen, & Helpers, Teamsters Local 601 v.

25  Diamond Foods, Inc., No. 2:09-cv-01175 GEB JFM, 2009 4505909, at

26  *4-5 (E.D. Cal. Nov. 20, 2009) (holding that union's alleged

27  failure to file a written grievance, as required by the parties'

28  CBA, was a "procedural question" that did not bar the court from

14

1    compelling arbitration).

2           John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543

3    (1964), is also instructive.  Wiley argued that it was excused

4    from arbitrating a dispute with its union because the union had

5    not exhausted the three-step grievance procedure set forth in the

6    collective bargaining agreement.  Id. at 555-56.  The Court

7    disagreed.  Id. at 556-57.  It reasoned that once a court has

8    determined "that the parties are obligated to submit the subject

9    matter of a dispute to arbitration, 'procedural' questions which

10   grow out of the dispute and bear on its final disposition should

11   be left to the arbitrator."  Id. at 557.  The Court therefore

12   concluded that "whether grievance procedures or some part of them

13   apply to a particular dispute, whether such procedures have been

14   followed or excused, or whether the unexcused failure to follow

15   them avoids the duty to arbitrate" are procedural questions that

16   do not bar a court from compelling arbitration.  Id.

17          Defendant attempts to distinguish Wiley by noting that

18   the grievance procedure there did not require informal resolution

19   as a condition precedent to arbitration.  (Def.'s Reply at 9.)

20   This is a distinction without a difference: whether or not

21   defendant's reading of the CBA is correct, it is not the court's

22   place to "decide whether a condition precedent to arbitrability

23   has been fulfilled."  Howsam, 537 U.S. at 84 (citations omitted).

24   It would be especially inappropriate for the court to do so here

25   because plaintiff's seventh grievance alleges that defendant

26   violated the CBA by refusing to process informal grievances

27   brought by Union representatives in a timely manner.  (See FAC

28   Ex. B.)  As a result, the question of whether plaintiff complied

                                  15

1  with the CBA's grievance procedures "cannot . . . be answered
2  without consideration of the merits of the dispute which is
3  presented for arbitration." Wiley, 376 U.S. at 557; see also
4  Republic of Nicaragua v. Standard Fruit Co., 937 F.2d 469, 477-78
5  (9th Cir. 1991) (warning that courts "must be careful not to
6  overreach and decide the merits of an arbitrable claim" in the
7  course of interpreting an arbitration clause).

8          In short, the arbitration provision of the CBA
9  encompasses plaintiff's grievances, see Cox, 533 F.3d at 1119,
10 and an arbitrator, rather than the court, should decide whether
11 plaintiff has complied with the grievance procedures set forth by
12 the CBA. See Howsam, 537 U.S. at 85. Accordingly, the court
13 must grant plaintiff's motion to compel arbitration.[4]

14         IT IS THEREFORE ORDERED that:

15         (1) defendant's motion to stay or, in the alternative,
16 to dismiss be, and the same hereby is, DENIED;

17         (2) plaintiff's motion to compel arbitration be, and
18 the same hereby is, GRANTED.

19 Dated:  October 8, 2013

20                              _____
21                              WILLIAM B. SHUBB
22                              UNITED STATES DISTRICT JUDGE

23

24

_____

25         [4] In its Reply, plaintiff asks the court to order an
26 attorney's fee award to punish defendant for its allegedly
   dilatory tactics. (Pl.'s Reply at 9-11 (Docket No. 17).) The
27 court will not award attorney's fees at this time, and will
   consider the merits of a fee award only upon receipt of a
28 properly filed motion for attorney's fees.